MARGARET NAGGY, Appellant, v. PROVIDENT LIFE & ACCIDENT INSURANCE COMPANY, Appellee.

No. 42347.

JUNE 23, 1934.

REHEARING DENIED SEPTEMBER 20, 1934.

W. H. Keating, for appellant.

Parrish, Cohen, Guthrie & Watters, and Devitt, Eichhorn & Devitt, for appellee.

CLAUSSEN, C. J.—The defendant insurance company issued to one Nick Naggy a policy of life insurance, in which plaintiff was named beneficiary, which provided for the payment of certain specified benefits, in case the insured came to his death through external, violent, and accidental means. This suit is brought to recover such

benefits; it being alleged in the petition that the said Nick Naggy was accidentally injured by unintentionally taking poison, as a result of which he died. The record discloses that the insured had a number of teeth extracted about a week before the date of his death. Subsequent to the extraction of such teeth the insured suffered from severe chills. The day before his death, he arose in the morning for the purpose of going to work, but suffered another chill and returned to his bed. Later on and at about 10:30 that morning he left his home. In the meantime his wife also went away from home, and upon her return at about 2:30 in the afternoon her husband was in the bedroom very sick. He had evidently been drinking. He was vomiting. The odor of liquor was present. His condition became worse, and finally about 5:30 a physician was summoned. The insured's condition did not improve. The following day at about 1 o'clock p. m. the physician was summoned again. The insured died at about 6:30 p. m. It is certain that the insured procured and drank the liquor which resulted in his death between 10:30 a. m. and 2:30 p. m. on the day preceding his death. The record is entirely silent as to what the insured did during this period of time, except that it is revealed that he purchased some groceries. It does not disclose where the insured obtained the liquor, its kind or character, or the quantity which he drank. The physician testified that the odor on the insured's breath was about the same as was produced by the quality of "hootch" sold in that neighborhood. The evidence indicates that the liquor consumed by the insured contained some fusel oil, for the physician testified that the insured's breath smelled of it while he was alive. There is no evidence in the record to indicate that this poison was present in unusual quantities in the liquor which the insured consumed. In fact there is no evidence in the record in relation to fusel oil except the statement of the physician that fusel oil is a poison and that the insured's breath smelled of it while he was alive. The physician testified that the cause of death of the insured was "an overdose of liquor. This means he was poisoned from the effects of it, he took more than he could stand."

At the close of plaintiff's case the court sustained a motion for a directed verdict made by defendant. From such action this appeal is prosecuted.

As above stated, plaintiff alleged in her petition that the insured

was accidentally injured by unintentionally taking poison. In her brief and argument in this court she says:

"The accidental means (producing death) was the unintentional taking liquor which became a poison to the deceased * * * *"

These allegations and statements have caused us to make a very painstaking examination of the record to discover whether it contains any evidence that the insured unintentionally took any liquor. The record is absolutely barren of direct evidence that the insured took any liquor. From the fact that the insured's wife and attending physician smelled liquor upon insured's breath and the added fact that the physician testified that death was due to an overdose of liquor, it is certain that the insured did partake of some liquor. But there is no evidence from which it can be inferred that the insured took the liquor unintentionally or under a mistaken notion as to the amount taken or as to its character. Concerning these matters there is no evidence. In fact, in the course of plaintiff's argument in this court, it is practically conceded that the liquor was intentionally taken, for there it is said:

"We are met at the threshold of this cause with the fact that it is practically conceded by all parties that the man came to his death from drinking liquor which caused a poison in his system which brought about the result which caused his death.

"It is not the receiving liquor, nor was it the taking of the liquor, but it was the effect of the same after it entered into his system."

The material allegation of the petition that death was due to the unintentional taking of poison finds no support in the record.

In the last analysis it is plaintiff's contention that the insured was mistaken concerning the consequences which were to follow his consumption of the liquor and that in consequence his death was due to accidental means. In this aspect, the case is ruled against plaintiff by our holdings in Calkins v. National Travelers Benefit Assn., 200 Iowa 60, 204 N. W. 406, 41 A. L. R. 363, Martin v. Interstate Business Men's Accident Assn., 187 Iowa 869, 174 N. W. 577, and Carnes v. Iowa State Traveling Men's Assn., 106 Iowa 281, 76 N. W. 683, 68 Am. St. Rep. 306. The Calkins case is almost identical in its facts with the case before us.

The action of the trial court in directing a verdict for the defendant was proper, and as a consequence the judgment appealed from is affirmed.—Affirmed.

EVANS, STEVENS, ALBERT, ANDERSON, MITCHELL, and DONEGAN, JJ., concur.