Sullivan,
April 7, 1936.

JAMES E. McGINLEY

*v.*

JOHN HANCOCK MUTUAL LIFE INS. CO.

SAME *v.* METROPOLITAN LIFE INS. CO.

*John H. Leahy* (by brief and orally), for the plaintiff.

*Demond, Woodworth, Sulloway, Piper* and *Jones* (*Mr. Piper* orally), for the defendants.

WOODBURY, J. The problem presented is one of the construction or meaning to be given to the words of a contract of insurance. This presents a question, not for the jury, but for the court. Hening, N. H. Dig. Tit. Contract, *p.* 284. And in answering this question an external standard is to be adopted, no presumption being indulged in for the benefit of either party. The question is, what would a reasonable person in the position of the insured understand the words of the policy to mean? *Duhaime* v. *Insurance Co.*, 86 N. H. 307, and cases cited. In other words, would the hypothetical reasonable man describe a death from acute alcoholism as one caused by "external, violent and accidental means?"

At the outset it is to be noted that what the decedent did she did knowingly, voluntarily and without error or mistake on her part. She drank what she intended to drink in the quantity intended, and the beverage did not, unknown to her, contain any poisonous substance. What was unforeseen, unexpected and sudden was the effect of that beverage upon her. From this it can be said that she died an accidental death, because that term may be applied to either cause or result, (*Guay* v. *Company*, 83 N. H. 392, 394) but it does not necessarily follow from this that she can be said to have died "through external, violent and accidental means."

The above quoted words are not uncommon in insurance policies and have frequently been the subject of litigation. The results of this litigation, however, are anything but uniform. Some courts seem to regard the words "accidental means" and the word "accidental" as synonymous. *Schleicher* v. *Insurance Co.*, 240 Ill. App. 247, and cases cited; *Fort Worth Mut. &c. Ass'n* v. *Miller*, (Texas) 280 S. W. Rep. 338; *Ross* v. *Association* (Texas) 283 S. W. Rep. 621;

*Mutual Life Ins. Co.* v. *Dodge*, 11 Fed. (2d) 486; *Horsfall* v. *Insurance Co.*, 32 Wash. 132.   Other courts, while recognizing that their meaning is not the same, regard that distinction as either technical and inconsequential, or else as an unwise one to draw.   *Carter* v. *Insurance Co.*, 65 Utah 465.   See also the dissenting opinion of *Cardozo*, J. in *Landress* v. *Insurance Co.*, 291 U. S. 491, 498, in which he says: "The attempted distinction between accidental results and accidental means will plunge this branch of the law into a Serbonian Bog."

The weight of authority, however, is that there is a substantial difference in the meaning of the words.   The leading cases supporting this majority rule are from the supreme court of the United States.   *United States Mut. &c. Association* v. *Barry*, 131 U. S. 100; *Landress* v. *Insurance Co.*, *supra*.

In the earlier of these cases the insured died as a result of an internal injury sustained when he voluntarily jumped a distance of four or five feet from a platform onto the ground.   At the trial it was left to the jury to say whether or not there was "anything accidental, unforeseen, involuntary, unexpected, in the act of jumping, from the time the deceased left the platform until he alighted on the ground."   And "Did he accomplish just what he intended to, in the way he intended to?"   "Did his feet strike the ground as he intended or expected, or did they not?   Did he or not miscalculate the distance, and was there or not any involuntary turning of the body, in the downward movement, or in the act of alighting on the ground?"

The court sustained these instructions in the following words: "The court properly instructed them that the jumping off the platform was the means by which the injury, if any was sustained, was caused; and the question was, whether there was anything accidental, unforeseen, involuntary, unexpected, in the act of jumping, from the time the deceased left the platform until he alighted on the ground; that the term 'accidental' was used in the policy in its ordinary, popular sense, as meaning 'happening by chance; unexpectedly taking place; not according to the usual course of things; or not as expected'; that, if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual occurs which produces the injury, then the injury has resulted through accidental means."

In the second case cited above the insured died of sun-stroke while

playing golf. The court there said: "But it is not enough, to establish liability under these clauses, that the death or injury was accidental in the understanding of the average man—that the result of the exposure 'was something unforeseen, unsuspected, extraordinary, an unlooked for mishap, and so an accident' . . . for here the carefully chosen words defining liability distinguish between the result and the external means which produces it. The insurance is not against an accidental result. The stipulated payments are to be made only if the bodily injury, though unforeseen, is effected by means which are external and accidental." To the same effect see *Barnstead* v. *Association*, 204 App. Div. 473; *Kimball* v. *Company*, 44 R. I. 264; *New Amsterdam Cas. Co.* v. *Johnson*, 91 Ohio St., 155; *Parker* v. *Insurance Co.*, 178 La. 977; *Ogilvie* v. *Insurance Co.*, 189 Cal. 406; *Kendall* v. *Association*, 87 Ore. 179; *Hesse* v. *Insurance Co.*, 299 Pa. St. 125; *Henderson* v. *Insurance Co.*, 262 Mass. 522; *Joyce*, Insurance (2d ed.) *s.* 2863; Cooley, Briefs on Ins. (2d *ed.*) vol. VI, *p.* 5253 *et seq.* and cases cited.

We are of the opinion that the majority rule as expressed in the above cases is supported by the better reason. To give the same effect to the phrase "accidental means" as to the word "accidental" is to ignore the presence of the word "means." This word, however, should not be ignored because, in construing a contract or other written instrument, we must assume that the words used were used advisedly and for the purpose of conveying some meaning. Words are only to be ignored or regarded as surplusage when to do otherwise would be either to render the document insensible or else to produce a result obviously at variance with its clear intention or purpose. Such a course is not forced upon us in the instant case. Effect may readily be given to the word "means," and we perceive no reason for not giving it effect. Although the word "accidental" standing alone may refer to either cause or result, as pointed out above, the use of the word "means" in conjunction with it, clearly limits its meaning to cause alone. The word can serve no other purpose.

From this it follows that death supervening as an unforeseen, unexpected and unusual result of acts done knowingly, voluntarily and without error or mistake as to external agencies, although a death by accident, is not a death "through external, violent and accidental means."

The only cases squarely in point which have come to our attention are *Mehaffey* v. *Insurance Co.*, 205 N. C. 701; *Calkins* v. *Association*,

200 Ia. 60; and *Naggy* v. *Insurance Co.*, 218 Ia. 694. These cases all reach the same conclusion as that reached in the one at bar, but it is to be noted that in both of the Iowa cases the beverage contained a poisonous substance known as fusil oil, a fact, apparently, not considered by that court to be of any importance in either case.

The defendants' motions for nonsuit ought to be granted.

*Judgments for the defendants.*

All concurred.