Hillsborough, Dec. 3, 1940. } No. 3198.

### ROLAND HENRI LANGELIER

*v.*

### METROPOLITAN LIFE INSURANCE COMPANY.

*Samuel A. Margolis* (by brief and orally), for the plaintiff.

*Wyman, Starr, Booth, Wadleigh & Langdell* (*Mr. Booth* orally), for the defendant.

WOODBURY, J. The policy here in suit is of the same kind as the one considered by this court in the case of *Duval* v. *Insurance Co.,*

82 N. H. 543.   In the instant action, however, the plaintiff did not put in evidence the so-called master policy issued by the defendant to Sears, Roebuck and Co. but instead based his right to recover solely upon a provision in the certificates issued to him by the insurer.   This provision reads as follows: "The Group Life Policy mentioned on page one of this Certificate provides the benefits specified below in the case of any Employee who furnishes due proof to the Company, within one year after the termination of his insurance, that, while insured thereunder and prior to his 60th birthday, he has become totally and permanently disabled, as a result of bodily injury or disease, so as to be prevented thereby from engaging in any occupation and performing any work for wage or profit."

The plaintiff's evidence indicated that he was stricken with pulmonary tuberculosis in August 1938, while in the employ of Sears, Roebuck and Co. and while his insurance was in effect, and that as a result thereof he was forced to quit his employment and was rendered incapable of doing any work of any kind for a period of eighteen or twenty months.   On August 18, 1938, he obtained outdoor employment for wages with the United States Department of Agriculture, his tubercular condition being then arrested, and he is now able to do work of this nature.   He was well under sixty years of age when he was taken sick.

The question presented is whether he was totally and permanently disabled by disease as those terms are used in the certificate quoted above.

The defendant admits that the plaintiff's disability when he left his employment with Sears, Roebuck and Co., and for several months thereafter, was total, but contends that it was not permanent.   Obviously his practical recovery proves that this is so, but mere recovery, standing alone, is not enough to defeat the plaintiff's rights under the policy.   To come within the meaning of the word "permanent," as we have recently indicated, an insured does not have to show a condition of "utter hopelessness."   *Duhaime* v. *Insurance Co.*, 86 N. H. 307, 308.   Furthermore it is clear that the parties to the contract under consideration did not intend the words "permanently disabled" to be defined with absolute literalness because in the certificate it is provided that "In the event of the recovery of the Employee from such disability before all installments have been paid, further payments shall cease and the insurance on the life of the Employee shall be revived."   The specific question under the contract before us then is whether, after the onset of the disease, the

plaintiff's condition of total disability as a result thereof would more probably than not prove to be permanent. There is no evidence that it would.

In a statement of claim filed by the plaintiff with the defendant on December 1, 1936, the doctor who had him in charge reported his condition to be "improving," the prognosis to be "very good," his disability to be "temporary," and that he thought the plaintiff could resume work "around February 1, 1937." In a similar statement filed on February 19, 1937, the same doctor in answer to the question whether the disability would be permanent or temporary replied with a question mark and said it would be "hard to tell at the present time" when the plaintiff would be able to resume employment. A statement of this doctor written out in longhand and signed by him under date of January 23, 1937, to the effect that on August 31, 1936, the plaintiff "became permanently and totally disabled" and "has been ever since" does not aid the plaintiff's case because it states at the most only the doctor's conclusion as to the meaning of the word "permanent." In addition it is self contradictory in that the sentence which follows that from which the last quotation above is taken reads: "As to how long he will remain thus depends on the progress he will make towards recovery."

The testimony of this doctor on the stand as well as that of an X-ray specialist also indicated that at no time was the plaintiff's sickness considered severe enough to warrant a prognosis of its permanence. In short, while there is evidence of the plaintiff's total disability there is none that it was ever considered to have been permanent by any witness qualified to express an opinion on the subject. In consequence the plaintiff's case fails for lack of proof and the court's order of nonsuit was proper.

The plaintiff's offer to prove his own understanding of the meaning of the terms used in the certificate was properly rejected. The test of the meaning of those words is not what the insurer intended them to mean nor yet what the insured thought they meant. It is what a reasonable person in the position of the insured would have considered their meaning to be. *Duhaime* v. *Insurance Co.*, 86 N. H. 307, 308 and cases cited; *McGinley* v. *Insurance Co.*, 88 N. H. 108.

*Judgment for the defendant.*

All concurred.