### HANNA v. RIO GRANDE NAT. LIFE INS. CO.

No. 13546.

Court of Civil Appeals of Texas. Dallas.

June 16, 1944.

Rehearing Denied July 14, 1944.

DeShazo & Hyde and Francis M. Chaney, all of Dallas, for appellant.

Read, Lowrance & Bates, of Dallas, for appellee.

YOUNG, Justice.

Appellee's policy on the life of C. M. Hanna promised to pay his beneficiary (appellant wife) $500 on death from natural causes; providing for payment of an additional $500 in event of death from bodily injuries sustained solely through external, violent and accidental means. This suit was for recovery of $500 under the latter or double indemnity provision of the policy.

On pre-trial and hearing of defendant's motion for judgment on the pleading, same was sustained; and upon entry of adverse judgment plaintiff has appealed.

Insured died about January 25, 1942, and the substance of appellant's pleadings in the District Court was that during the latter part of December 1941, and the first part of January 1942, her husband, C. M. Hanna, developed a common cold, for which he voluntarily took sulfanilamide tablets. Then, being seized with a chill, he called in a physician who prescribed sulfanilamide and aspirin without knowing or taking into account that the patient had, prior thereto, taken sulfanilamide and had built up within his system a condition which rendered further use of such tablets dangerous and poisonous to his life; that he was given the medicine without knowledge of what it contained or its effect on his system; and was thereby given by mistake an overdose of the sulfanilamide drug, which, when taken into his system, attacked and destroyed the red and white corpuscles of his body, proximately causing his death.

In the alternative, it was pled that if plaintiff be mistaken in the allegation that death was due to an overdosage of sulfanilamide, then, she says, that at the time of her husband's January illness the doctor prescribed aspirin every 2 to 4 hours, to be taken along with said sulfanilamide, and that at the time of taking said tablets, unknown to the physician and deceased, there existed within his body a certain intolerance to the sulfanilamide and aspirin, or to the combination of the two, which intolerance caused chemical reaction in the blood of C. M. Hanna, and, in some manner unknown to plaintiff—the exact medical description being for that reason not alleged—produced a destruction of the red and white blood corpuscles of his blood stream, thereby causing his death; all being within the terms of the double indemnity clause of defendant's policy as a death resulting from accidental means. By way of trial amendment, the following was further alleged: "* * * plaintiff says that the sulfanilamide tablets mentioned therein (were) poisonous to the insured and his system by reason of some unknown element in said tablets and drug, combining in some unknown element or condition of his body, but that ordinarily and under ordinary circumstances said drug, when taken, was not injurious, but reacted favorably to a person of normal condition, when taken in the amounts taken by the deceased; that said element in said drug injurious to the insured was unknown to the insured, and that said condition in insured's body, which combined with said drug, was unknown to the insured and that the cause of insured's death was the combination of the unknown element in said drug and the unknown element in insured's body, which was unexpected and unanticipated by the insured and by the physician who prescribed said drug."

Attached to the pleading was a copy of defendant's contract providing for the stated indemnity in event of death from bodily injuries sustained "solely through external, violent and accidental means." It will be noted that an over-dose of sulfanilamide by mistake was pled; alternatively, that because of unknown elements in both the drug and system of the assured, the fatal consequences of its taking was an event covered by the foregoing provisions of the policy. The only question for our determination here is whether, on face of the pleading, a cause of action has been alleged; the issue really centering around an appropriate construction of the term "accidental means", where the casualty is occasioned by intentional or voluntary action of the assured.

Many jurisdictions hold that if the means which cause an injury are voluntarily employed in the usual and intended way, the resulting injury, even though it be entirely unusual, unexpected and unforeseen, is not produced by accidental means; in short, that the means, as well as the result, must be accidental; Caldwell v. Travelers' Ins. Co., 305 Mo. 619, 267 S.W. 907, 39 A.L.R. 56; McFarland v. Massachusetts Bonding & Ins. Co., 157 Tenn. 254, 8 S.W.2d 369, 64 A.L.R. 962; Northam v. Metropolitian Life Ins. Co., 231 Ala. 105, 163 So. 635, 111 A.L.R. 622; Smith v. Ætna Life Ins. Co., 24 Tenn. App. 570, 147 S.W.2d 1058. Other State authorities, however, apply to the term an interpretation of somewhat broader scope. It is stated in 1 C.J., page 427, viz.: "Where the effect is not the natural and probable consequence of the means which produce it—an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of the means, or an effect which the actor did not intend to produce, and which he cannot be

charged with a design of producing—it is produced by accidental means." At least since International Travelers' Ass'n v. Francis, 119 Tex. 1, 23 S.W.2d 282, 284, our Supreme Court has been committed to the latter or more liberal rule.

■ Under the court's judgment herein, and for the purpose of this discussion, plaintiff's allegations of fact must be taken as true. Deceased, C. M. Hanna, ill with a cold took the sulfanilamide tablets and aspirin on a doctor's prescription. It was charged that there was either an overdose of the drug by mistake, or that some unknown element in the medicine, combining with an unknown idiosyncrasy of body, produced fatal results, same constituting death from bodily injury sustained solely, through external, violent and accidental means, In the Francis case, supra, infection, blood poison and death followed the extraction of deceased's tooth; and to similar provisions in the policy there sued on, Chief Justice Cureton, quoting extensively from Cooley's Briefs on Insurance, applied the following test of liability: "Whether or not the means is accidental is determined by the character of its effects. Accidental means are those which produce effects which are not their natural and probable consequences. * * * an effect which is not the natural or probable consequence of the means which produced it, an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of such means, an effect which the actor did not intend to produce and which he cannot be charged with the design of producing, is produced by accidental means. It is produced by means which was neither designed nor calculated to cause it. Such an effect is not the result of design, cannot be reasonably anticipated, is unexpected, and is produced by an unusual combination of fortuitous circumstances; in other words, it is produced by accidental means." Judge Cureton further said in this connection: "The expressions we have quoted from Cooley above do not state that because of an injury we infer an accident, but the meaning is that, where normal and ordinary means are employed in the usual way, and, instead of producing the usual, normal, and expected result, an altogether different and fatal thing happens, the result is an accidental one, because an unknown factor, unexpected and unforeseen, has entered into the circumstances, which the authorities call a vis major or an act of God; and, when the vis major is so connected with the means employed, as in the instant case, as to be a part and parcel of what would otherwise have been a voluntary act, then the means employed, though employed voluntarily, take color from the unknown and fatal factor and become accidental." United States Mutual Accident Ass'n v. Barry, 131 U.S. 100, 9 S.Ct. 755, 33 L.Ed. 60, and Bryant v. Continental Casualty Co., 107 Tex. 582, 182 S.W. 673, L.R.A.1918E, 945, Ann. Cas.1918A, 517, among numerous authorities, are then cited.

■ That plaintiff's cause of action as pled is within these announced principles, is apparent. The unknown factor is alleged, producing a result not beneficial as intended, but fatal. The law of the Francis case has been consistently followed and approved by our Supreme Court. See International Travelers' Ass'n v. Yates, Tex.Com.App., 29 S.W.2d 980, where death resulted from use of an anesthetic preparatory to a tonsil operation; also Seaboard Life Ins. Co. v. Murphy, 134 Tex. 165, 132 S.W.2d 393. Of outside decisions, Taylor v. New York Life Ins. Co., 176 Minn. 171, 222 N.W. 912, 60 A.L.R. 959, is nearest in point. There the assured was given a local anesthetic (novocaine) preparatory to a tonsil operation. Unknown to the patient and surgeon, her body was hypersensitive to the drug and death ensued before the operation was performed. Her bodily condition was not that of a normal person, but abnormal to a degree rarely found. The court, in affirming liability, said: "* * * the weight of authority is to the effect that the term 'accidental' is equally descriptive of means which produce effects which are not their natural and probable consequences, as it is of means which are wholly unexpected"; citing many cases common to International Travelers' Ass'n v. Francis.

But appellee argues that the earlier Supreme Court interpretation of "accidental means" in Bryant v. Continental Casualty Co., supra, clearly excludes liability under the instant facts. There death was from a sunstroke sustained while assured was walking on a hot summer day, the casualty being held within terms of the policy. In course of a lengthy opinion, Chief Justice Phillips had this to say [107 Tex. 582, 182 S.W. 676, 33 L.Ed. 60]: "It is generally recognized, as it should be,

that where a man undertakes to do a certain thing by a particular means, and the result of his act is such as follows, *in not* an unusual or unexpected way, from the means voluntarily used, it cannot be said to be due to an accidental cause, though, in the sense that it was not intended, an accidental result is the consequence." (Emphasis ours.) We do not regard the quoted excerpt as in conflict with the principles announced in International Travelers Ass'n v. Francis; even so, the later case must be considered authoritative. Judge Phillips was simply referring to results naturally following an act voluntarily done, without error or mistake as to external agencies; see McGinley v. John Hancock, etc., Co., 88 N.H. 108, 184 A. 593; Naggy v. Provident Life & Accident Ins. Co., 218 Iowa 694, 255 N.W. 526, and Vance on Insurance, Sec. 258, page 869 et seq., for illustrative cases. And would not the corollary to the above statement of Judge Phillips also be true, that, where the result of a given act is such as follows in *an unusual and unexpected way* from the means voluntarily used, it *can* be said to be due to an accidental cause? Indeed, aforesaid corollary is implicit in the Bryant opinion, for there when discussing the facts of United States Mutual Accident Ass'n v. Barry, supra (a leading authority on the subject), Judge Phillips said: "It was held to have been an accident, notwithstanding the voluntary nature of the act which caused it, for the reason that it was an unforeseen result, following, not naturally from the act, but in *an unusual and unexpected way*." (Emphasis ours.)

In the Francis case, Judge Cureton referred to the "two clearly defined lines of authorities," on the question here involved, citing Caldwell v. Travelers' Insurance Co., supra; and, as already seen, expressly adhered to the more liberal rule there outlined, in which connection it is significant that he considered the previous decision of Bryant v. Continental Casualty Co. as consistent in statements of principle.

Furthermore, plaintiff has pled an over-dose of the medicine by mistake, resulting fatally. Such state of facts has been uniformly held to involve liability under a contract providing against death or injury through external, violent and accidental means; Kennedy v. Ætna Life Ins. Co., 31 Tex.Civ.App. 509, 72 S.W. 602; Lewis v. Ocean Accident & Guarantee Corp., 224 N.Y. 18, 120 N.E.

56, annotated in 7 A.L.R. 1131, supplemented to 111 A.L.R. 628. And referring to the policy terms of "external" and "violent", same are referable to death or injury from an accidental or unnatural cause; the term "external" applying to the force or means, and not to the injury. "Thus, poison taken into the system, and operating entirely internally, is nevertheless an external cause, as is the water which causes death by drowning, and gas which causes asphyxiation. Likewise, the term 'violent', as applied to causes of accidental injury, means merely that the cause is efficient in producing a harmful result. It is not necessary that it shall be violent in the sense of breaking tissues or otherwise physically and visibly affecting the body." Vance on Insurance, 2d Ed., Sec. 258, page 879. See also Paul v. Travelers' Ins. Co., 112 N.Y. 472, 20 N.E. 347, 3 L.R.A. 443, 8 Am.St.Rep. 758; American Acc. Co. v. Reigart, 94 Ky. 547, 23 S.W. 191, 21 L.R.A. 651, 42 Am.St.Rep. 374; Ætna Life Ins. Co. v. Brand, 265 F. 6, 13 A.L.R. 657; Burns v. Empire Employers' Liability Ass'n, Ohio App., 31 N. E.2d 690.

We conclude, therefore, that the pleading in question disclosed grounds of action, and the learned trial court erred in rendering judgment of dismissal.

Reversed and remanded for trial to the merits.

BOND, C. J., dissenting.

BOND, Chief Justice (dissenting).

The parties to the insurance contract made the conditions and contingencies of liability. Manifestly they were satisfied with the terms, hence it is not within the province of courts to alter, change or ingraft, by interpretation or otherwise, any other condition or contingency. This contract does not insure for accidental death; it provides, and so pleaded by appellant, that the Insurance Company agreed to pay $500 for natural death and $500 for death resulting from bodily injuries caused solely through "external, violent and accidental means." The $500 for natural death was paid. This appeal is from the judgment of the trial court on plaintiff's pleadings, denying recovery for death through accidental means; hence a question of law.

The allegations in plaintiff's petition show affirmatively that the insured's death did not result from any bodily injuries

sustained by him solely through external, violent and accidental means,—but was the result of a voluntary taking by him of sulfanilamide and aspirin tablets in the exact dosage intended by him, and taken under the advice and prescription of a competent physician. There is no mistake or accident alleged in the means resulting in the fatal death. The mere fact that insured died from taking the tablets does not raise an issue that his death was the result of external, violent and accidental means.

While it might well be conceded that the taking of sulfanilamide and aspirin, one or both, resulted in the insured's death and that death from that cause was not expected, yet the taking of the tablets was in no manner accidental or violent. If the medicine was voluntarily taken, even though unusual, unexpected and unforeseen fatal injury resulted, such result was not produced by external, violent and accidental means. Of course had the means employed been combined with some other unexpected, unintended, concurring external means, and the other, or the two combined, produced fatal results, then it might be said that the means were accidental; but where the means voluntarily employed were the sole external agency that caused the fatal result, such result would not come under the contingency of the policy.

Nothing is accidental that is done intentionally. To say that when one takes medicine in the exact dosage which he intended and was advised by his physician to take was an accident, does violence to the English language. True, in the light of the pleadings, the result of death was unexpected; contrary, curative results were intended; however, there were no external, accidental means employed to produce the unexpected results. The results, as alleged, were due solely to an abnormal condition of insured's system, brought about by the voluntary acts of the insured. There is no allegation that an unknown concurring factor or element entered into the means employed by the insured, or that his abnormal condition was brought about by the sulfanilamide and aspirin that caused his death; his physical condition was present when he took the medicine. The insurance company did not insure against fatal results brought about by the insured voluntarily taking medicine, and certainly it did not insure that the medicine would not produce fatal results. Evidently insured's death was the natural result of taking the medicine; therefore, appellee's liability attached for natural death, and was paid by the insurance company.

The majority relates that plaintiff has pled that an over-dose of medicine was taken by mistake, resulting fatally to the insured. I am unable to agree that there is any allegation that insured took an overdose by mistake; such is not supported by the record. The allegations are that he took more of the sulfanilamide and aspirin than his abnormal condition would stand. There is no allegation of mistake as to the amount or dosage he intended to take, —no accident other than the fatal death. I quote verbatim the pleadings on the point: "Plaintiff further represents and shows to the court that during the month of December, 1941, the deceased, Charlie Mims Hanna, suffered with a common cold and took sulfanilamide tablets for the same during the latter part of December, 1941, and the first part of January, 1942; the exact dates of which the plaintiff does not now know or remember; and that thereafter in the early part of January, the deceased was taken ill with a chill and called Dr. S. Roland Brown; that the said physician came to see the said Charlie Mims Hanna and prescribed as a medicine for him to take sulfanilamide tablets and aspirin without knowing or taking into account the fact that the said Charlie Mims Hanna had prior thereto taken sulfanilamide tablets and had built up within his system a condition which rendered further taking and the further prescribing of the said tablets dangerous and poisonous to his life; that the said Charlie Mims Hanna was given said medicine without knowledge on his part as to what it contained or the effect of said medicine on the system of the said Charlie Mims Hanna, and was thereby given by mistake an over-dosage of the sulfanilamide drug, which attacked, when taken into his system, the red and white blood corpuscles of his body and destroyed them and caused his death in some manner; the exact medical terms of which this plaintiff does not know, and for that reason not specifically alleged, but that said act or taking internally the sulfanilamide drug prescribed by the physician was a direct and proximate cause of the death of the said Charlie Mims Hanna, and said death came within the terms of the insuring clause of said insurance policy,

insuring his life if his death was a result of accidental means."

In the alternative, plaintiff alleged that at the time insured took ill in January, 1942, "* * * the doctor prescribed to take along with the sulfanilamide drug, aspirin every two to four hours, which was given to him with the said sulfanilamide drug, and at the time of the taking of the said sulfanilamide drug, unknown to the said physician and unknown to the deceased, there existed within his body a certain intolerance to sulfanilamide drug and to the aspirin and/or to the combination of the two, which intolerance caused chemical reaction in the blood of the said Charlie Mims Hanna and in some manner unknown to the plaintiff, the exact medical description being for that reason not here alleged, caused the destruction of the red and white blood corpuscles of his blood stream, thereby causing his death."

It will be observed that appellant, in the pleadings, hinges liability solely on the unexpected, fatal results due to means which the insured voluntarily employed. Indeed, he made a mistake in taking the kind of medicine, but there is alleged no intervening, concurring, unexpected, external, violent, or accidental factor or element that entered into and produced the result. Appellant raises no such point in pleadings or brief. In brief, she assigns error on the action of the court in rendering judgment on the pleadings, on the ground that "the insured was given a drug by the physician, which said drug was administered in accordance with the directions of a qualified licensed physician, and which said drug, to-wit, sulfanilamide, ordinarily as administered was not poison but medicine in character, but on the occasion in question, due to an unknown condition of insured's system, chemical or otherwise, an entirely unexpected, unforeseeable and unusual result, that is death, was caused by the act of having the drug administered to the insured * * *". On this assignment points are raised, to-wit: First: "Even though the chain of circumstances leading to insured's death in this case was set in motion by the voluntary act of the insured, his death was due to external, violent and accidental means since the result of death was not the normal result of his action, and was not reasonably foreseeable by the insured, and was totally unexpected and unusual." Second: "The taking of a drug as a medicine for the purpose of curing a cold under a doctor's prescription, which said medicine ordinarily is the usual treatment for a cold and is harmless, which, due to some extraordinary and unknown condition of insured's bodily system produced death, was such a result as to bring said death within the terms of an insurance policy insuring against loss of life due to external, violent and accidental means." Third: "Medicine administered by a physician to a person, the insured, who has no knowledge that the drug was being given to him and which caused the death of the insured, would be such a death as comes within the terms of an insurance policy insuring the person's life against death due solely to external, violent and accidental means." Thus it will be seen that appellant does not contend that any other concurring factor or element entered into the fatal result. It is evident that the contract in suit does not insure against fatal results caused by the voluntary acts of the insured, or that it insures against poisonous effect of medicine on the insured.

The authorities, cited by the majority, hold in effect that where the cause of insured's death was set in motion by a voluntary act of the insured, and some external, unexpected factor or element entered into and caused the fatal result, then such death, under such circumstances, was due to external, violent and accidental means: In International Travelers' Ass'n v. Francis, 119 Tex. 1, 23 S.W.2d 282, 283, the authority on which appellant and the majority principally rely, the cause of death was due to an infection which occurred by a dental operation which produced Ludwig's Angina (an extraordinary and rare disease), unrelated to the surgical act performed. The Supreme Court, speaking through Chief Justice Cureton, said: "The drawing of the tooth and treatment following were of course purposeful and not accidental, but the infection was not the necessary or usual result of this purposeful act. It was extraordinary, unusual, and very rare. The proper surgical act, therefore, must have been accompanied by something unexpected, unforeseen, and improbable. *This unforeseen, unexpected, and improbable thing was the injection of the pythogenic organisms into the issues.* * * *" (Italics mine.) Thus the pythogenic organisms injected and not intended were the accidental means; not the operation and treatment. It was the

concurring cause that produced the fatal result. The entrance of the germ was made either on the dental instruments used or from cotton used by the dentist in his treatment, or from some other means; at all events, the germ found its way into the tooth socket, did its deadly work, producing the unusual, unlooked for, and unforeseen result, death.

On the facts in the Francis case, the Supreme Court further said: "There is no serious contention here but that the death of the insured was accidental; but the insistence is that the facts do not show that it was caused 'solely and exclusively by external, violent and accidental means.' In effect the insurance company here insists that there is a distinction between policies which insure against accidental death and those which insure against death by accidental means. This court has heretofore recognized this difference in the meaning of insurance contracts. Bryant v. Continental Casualty Co., 107 Tex. 582, 589, 182 S.W. 673, L.R.A.1916E, 945, Ann.Cas. 1918A, 517; International Travelers' Ass'n v. Ross, Tex.Com.App., 292 S.W. 193; Robinson v. Ætna Life Ins. Co., Tex.Com. App., 276 S.W. 900. We have no disposition other than to follow what we regard as the established rule."

And then, continuing, the court said: "The things actually done by the dentist in this case were the normal and usual things done by dentists without .fatal results. Moreover, each of these things was the expected thing to which all consented. In consequence, the expected result would have been that the gum would heal and the patient recover in the usual way in the usual time. That was the result which all had the right to expect, because that would have been the usual result. *But in this instance another factor entered into the operation, an unusual, unexpected, and unforeseen factor,* to wit, the pythogenic organisms which produced Ludwig's Angina and subsequent death, * * *" (Italics mine.)

It will be observed that in the Francis case, supra, the Supreme Court, among many authorities, cited and affirmed the holding in the celebrated Barry case, saying that: "The celebrated Barry case, supra, from the Supreme Court of the United States, is a very fair illustration of the principal involved. Dr. Barry intended to jump without injury, but for an unknown and unseen cause he alighted heavily and not in a usual or expected manner. *Some unknown factor entered into his act,* which prevented the co-ordination of his muscles, with an unintended and unforeseen result. The Supreme Court of the United States held that the fact that when he jumped from the platform he alighted heavily was sufficient evidence of an injury brought about by external, violent, and accidental means." (Italics mine.)

Thus the underlying principle announced by the Supreme Court is that: "when the vis major is so connected with the means employed, as in the instant case, as to be a part and parcel of what would otherwise have been a voluntary act, then the means employed, though employed voluntarily, take color from the unknown and fatal factor and become accidental." Therefore, in the case at bar, the death of the insured having been caused or contributed to by the abnormal or diseased condition of the insured's body, and but for that condition the fatal results would not have occurred, as alleged in plaintiff's petition, then his death must be said to have been due to the diseased or abnormal condition of the body and not to accidental means.

In the case of Yates v. International Travelers' Ass'n, Tex.Civ.App., 16 S.W. 2d 301, the insured, in the course of an operation, was administered nitrous oxid gas, and was asphyxiated. The physician gave evidence that the exact amount of oxygen was administered, and that ordinarily the gas is not harmful; but the record in that case circumstantially showed, or raised the issue, that some unforeseen, unexpected, and not intended factor entered into the administration of the anesthetic. The Texarkana Court of Appeals, affirmed by the Supreme Court (International. Travelers' Ass'n v. Yates, Tex. Com.App., 29 S.W.2d 980), held that the death of the insured by asphyxiation was due to impaired or defective condition of the machine used in administering the gas preparatory to operation, hence the death was by accidental means within the meaning of the accidental provisions of the policy. In effect, the courts held that if the proper mixture of oxygen had been administered and no evidence of defective machine or other concurring cause of death, the death would not have been due to accidental means. Illustrating the point: A party has a severe pain in the region of his appendix, and, believing the pain

was a minor matter, he took on the advice of his physician an unusually large dose of purgative medicine. The medicine was harmless in the usual and ordinary case of stomach trouble; but it developed that the pain was due to a diseased appendix, hence the ordinary and usual medicine which he took was dangerous to his then condition; a ruptured appendix resulted, and an unexpected death. Can it be said that his death was due to accidental means? The question answers itself. That is the situation here.

I have been unable to find any authority in this State holding that a policy, as in this case, insures against acts voluntarily done, without some concurring, unknown, unintended and unexpected external factor entering into the cause of death. The physical condition of the insured was the cause of his death. He brought about his condition, and, by taking what he thought was a harmless drug, without knowing its deadly effect on his unknown physical condition, produced death. I am not unmindful of the rule that an insurance policy must be construed most favorably to the insured. This rule, however, does not operate to cause courts to give words and expressions contained in a policy a meaning not intended. The policy here insured for natural death, which was duly paid; and for death by accidental means,—not accidental death.

There is a distinction, as held in the Francis case. In that case, liability hinged on the terms of the policy insuring for accidental death; unlike the one here, insuring for death by accidental means. The opinion of this Court in the Francis case, Francis v. International Travelers' Ass'n, Tex.Civ.App., 260 S.W. 938, recognizing the distinction, cited with approval Bryant v. Continental, etc., 107 Tex. 582, 182 S.W. 673, L.R.A.1916E, 945, Ann. Cas.1918A, 517; Horton v. Travelers' Ins. Co., 45 Cal.App. 462, 187 P. 1070.

In my opinion, under terms of the policy, liability is not alleged; the judgment of the trial court should be affirmed.

#### On Motion for Rehearing.

YOUNG, Justice.

Appellee points to error in original opinion "in finding that the appellant pleaded that the insured was given an over dose of sulfanilamide when the pleading was that there was an over dosage and it was not that there was an over dose."

Our construction and statement of pleadings in such connection is not altogether accurate; and in lieu of the finding complained of, the following allegations from plaintiff's petition are quoted: "* * * that the said physician came to see the said Charlie Mims Hanna and prescribed as a medicine for him to take sulfanilamide tablets and aspirin without knowing or taking into account the fact that the said Charlie Mims Hanna had prior thereto taken sulfanilamide tablets and had built up within his system a condition which rendered further taking and the further prescribing of the said tablets dangerous and poisonous to his life; that the said Charlie Mims Hanna was given said medicine without knowledge on his part as to what it contained or the effect of said medicine on the system of the said Charlie Mims Hanna, and was thereby given by mistake an over dosage of the sulfanilamide drug, * * *."

Otherwise the motion for rehearing is overruled.

BOND, C. J., dissenting.