**BLACK et al. v. CONTINENTAL CASUALTY CO.**

**BLACK et al. v. PROVIDENT LIFE & ACCIDENT INS. CO.**

(No. 7379.)

Court of Civil Appeals of Texas. Austin.
June 12, 1929.

See, also, 9 S.W.(2d) 743.

E. C. Zellner, of Belton, for appellants.
A. L. Curtis, of Belton, for appellees.

BAUGH, J. Appellant, beneficiary in two accident insurance policies issued by the appellees to Elzie Burleson, deceased, joined by her husband, brought suit against the appellees to recover the amounts provided in the policies. The appellees, in addition to general demurrer and general denial, specially defended on the grounds: (a) That Elzie Burleson committed suicide; and (b), that he met his death as the result of injuries intentionally inflicted by some other person. Liability for death from either of these causes was expressly excepted in the policies sued upon.

The case was submitted to a jury upon the following special issues:

"Special Issue No. 1: Do you find from the evidence in this case that the deceased Elzie Burleson, came to his death as a result of injuries intentionally inflicted by himself?" To which the jury answered: "No."

"Special Issue No. 2: Do you find from the evidence that the deceased came to his death directly or indirectly from injuries intentionally inflicted by any other person than the deceased?" To which the jury answered: "Yes."

Based upon the jury's finding to the second special issue, the trial court rendered judgment in favor of the appellees on each policy.

■ Appellants' first complaint is directed to the form in which special issue No. 2 was submitted; that is, whether he met death *directly* or *indirectly*. This contention is without merit. No objection was made on the trial to the issue as submitted, and complaint was first made in the motion for new trial. It therefore came too late to be considered here. In any event the objection is wholly immaterial because it is not disputed that the death of Elzie Burleson resulted *directly* from gunshot wounds. The vital question was whether such injuries were *intentionally* inflicted.

At the close of the testimony, and before the case was submitted to the jury, the appellant requested a peremptory instruction in her favor on the ground that there was no evidence to sustain the special defenses pleaded by the appellees. This the court refused, and in her motion for a new trial appellant also asked that the finding of the jury on special issue No. 2 be set aside on the ground that there was no evidence to support it.

■ The appellees having alleged special defenses—that is, that the deceased met his death in a manner exempting the insurers from liability under the terms of the respective policies—they assumed the burden of proving these defenses by preponderance of the evidence. The facts proved are substantially as follows:

■ The deceased operated a restaurant in the town of Temple, Tex. The front portion of it was a dining room, immediately back of which was a kitchen, and back of the kitchen was an inclosed porch which opened out onto an alley. On the morning of February 23, 1927, the deceased entered his restaurant from the front, in a cheerful and friendly mood, went through the kitchen to the porch, where he called from the front part of the restaurant a negro named Hancock, who ran the restaurant during the night, and whom the deceased relieved early each morning. After a short conversation between Hancock and deceased, on or near the back porch, Hancock ran through the kitchen and dining room out on to the street in front, stating that the deceased, Burleson, had shot him. He had two gunshot wounds, one in the back of his leg and the other in his side. The shots were fired somewhere back of the restaurant and in immediate succession. The second of these shots struck Hancock as he passed through the kitchen. Hancock left the state shortly thereafter and did not testify on the trial. No one saw the deceased shoot Hancock, nor heard any quarrel between them, nor was any provocation for such shooting shown. Within a few moments (the exact time is not shown), after the first two shots fired at Hancock, and both of which struck him, two more shots were heard in the rear of the restaurant about the back porch. No one saw who fired these latter shots. When the officers arrived, Burleson was lying on the back porch with

two bullet wounds in his body, one on each side of his chest. Several feet from him, in the alley, was found a pistol with four empty shells. No one identified this pistol as belonging to Burleson. In response to the question of the police upon arrival some 15 or 20 minutes after the shooting, Burleson stated that he did not know who shot him. This statement he repeated in the hospital shortly before he died. It is unnecessary for us to set out or review here the evidence on the issue of suicide. The jury found as above stated that Burleson did not shoot himself. The evidence is sufficient to sustain that finding. The fact that the pistol found near his body contained four shells that had been fired would indicate that shots from the same pistol were fired at Hancock, who said that Burleson shot him, and at Burleson. A short time intervened, however, between the first two shots and the second two shots that were heard. If, as the jury found, Burleson did not shoot himself, there is nothing in the record to show who fired the shots that struck Burleson, nor under what circumstances such shots were fired. The record therefore discloses merely an unexplained killing. The record shows that Burleson was peaceful and law-abiding, and no suggestion is furnished as to who killed him, nor as to what prompted the act. The jury was left, after their finding against the defense of suicide, merely to surmise or to suspect who shot Burleson, and the circumstances under which it occurred. Under these circumstances and the decisions of the courts, we think there was no evidence that a third person *intentionally* shot the deceased, and that jury's answer to question No. 2 is without support in the evidence. When it was shown that Burleson met his death as the result of external and violent means, in the absence of a showing to the contrary, the presumption is that he met his death through accident. The rule as laid down in 1 C. J. 495, with reference to suicide, "intentional injury inflicted by a third person," self-inflicted injuries, etc., was fully considered by us and reviewed in International Travelers' Association v. Bettis (Tex. Civ. App.) 3 S.W.(2d) 481, to which we refer, and to the authorities there cited and discussed. No good purpose would be served by extending that discussion here.

The burden rested upon the insurance companies to show suicide, or that the shooting of Burleson was done by some other person, and that such injuries were intentionally inflicted by such other person. Merely an unexplained killing does not meet that burden. The presumption in such a case is in favor of the beneficiary, not in favor of the insurance company.

Two other contentions are made by appellant. One of these is that the trial court erred in refusing to give to the jury requested charge No. 1, as follows: "You are further instructed, if you find from the evidence, that the insured Elzie Burleson, came to his death by external and violent means, then the presumption of law is that he met his death by accidental means."

A similar requested charge, in almost identical language, was expressly condemned in Jennings v. Sovereign Camp, W. O. W. (Tex. Civ. App.) 296 S. W. 961. See, also, Stooksbury v. Swan, 85 Tex. 565, 22 S. W. 963.

The second requested charge, to the effect that in case of certain fact findings the jury "should return into court a verdict for the plaintiff," is clearly a general charge and not a proper one to give to the jury in a case submitted to them on special issues.

For the reasons stated, the judgment of the trial court is reversed, and cause remanded for another trial.

Reversed and remanded.