**METROPOLITAN LIFE INS. CO. v. RAY.**

No. 5028.

Court of Civil Appeals of Texas.
Texarkana.

April 9, 1937.

Rehearing Denied April 15, 1937.

Leake, Henry & Young, Hawkins Golden, and Harry M. Stanfield, all of Dallas, and Keeney & Moseley, of Texarkana, for plaintiff in error.

Wm. V. Brown, of Texarkana, for defendant in error.

JOHNSON, Chief Justice.

This suit was filed by defendant in error, Florine Ray, the surviving wife of Lillian Ray, deceased, to recover upon a contract of insurance evidenced by a group policy issued upon the application of the Texas & Pacific Railway Company, and a certificate of insurance issued thereunder upon the ap-

plication of Lillian Ray, as employee of the Texas & Pacific Railway Company, whereby plaintiff in error, defendant below, Metropolitan Life Insurance Company, as insurer, promised to pay Florine Ray as beneficiary the sum of $1,000 upon the death of insured, Lillian Ray, if "caused directly and independently of all other causes by violent and accidental means."

The insurer defended the suit upon the ground that the death of Lillian Ray was not caused by "accidental means" in that, it is alleged by defendant, Lillian Ray at the time of his death was attempting to burglarize a box car belonging to the Kansas City Southern Railway Company. It was the contention of insurer, defendant below, that justifiable homicide, though not among the risks expressly excepted in the policy, is, as a matter of law, a death not caused by "accidental means."

On trial of the case it was shown without dispute that Lillian Ray met instant death on the night of December 19, 1934, just off the right of way of the railroad yards of the Kansas City Southern Railway Company in the city of Texarkana, Tex., as the result of being shot in the back of the head by and while running from a special officer of the Kansas City Southern Railway Company.

The defendant introduced testimony of circumstances tending to show that immediately before he was killed, Lillian Ray had attempted to burglarize a box car belonging to the Kansas City Southern Railway Company. The trial court submitted the issue, accompanied by definitions, to the jury—and the jury answered—as follows:

"The offense of burglary is constituted by entering a house by force, at any time, with the intent of committing a felony or the crime of theft.

"'A house,' within the meaning of the foregoing definition, is any building of any public or private corporation or association, or of any individual, and of whatever material it may be constructed, and you are instructed that a railroad box car is a house, within the meaning of this definition.

"An attempt to commit a burglary is an endeavor to accomplish that crime carried beyond mere preparations, but falling short of the ultimate design in any part of it.

"All persons are principals who are guilty of acting together in the commission of an offense.

"You are the exclusive judges of the facts proved, the credibility of the witnesses and the weight to be given their testimony; but you will receive the law from the court, which is herein given you, and be governed thereby.

"Bearing in mind the foregoing definitions, you will answer the following special issues.

"Special Issue No. 1: Do you find from a preponderance of the evidence that immediately before the insured, Lillian Ray, was shot and killed, that he or that he and some other negro had attempted to burglarize a box car of the Kansas City Southern Railroad, as the term, 'attempt to burglarize,' has been heretofore defined to you..

"Answer 'Yes' or 'No.'

"Answer: 'No.'"

Upon the verdict of the jury and the undisputed facts of the case the court entered judgment for plaintiff. From an order of the court overruling its motion for new trial, the defendant has appealed by writ of error.

By its first proposition plaintiff in error attacks the action of the trial court in refusing its motion for a directed verdict and in refusing its motion for judgment non obstante veredicto, and presents the contention that the verdict of the jury is without support in the evidence, in that, it is contended, the uncontradicted testimony shows that Lillian Ray immediately before he was shot and killed was attempting to burglarize a box car. The testimony bearing upon the issue is as follows: E. B. Murrell, for defendant below, testified:

That at the time he shot and killed Lillian Ray, about seven p. m., December 19, 1934, he, witness, was employed by and as a special officer of the Kansas City Southern Railway Company—holding a Texas Ranger commission; that a part of his duties was to patrol the yards of the Kansas City Southern Railway Company.

"Q. I wish you would just tell the jury what happened regarding his death, and leading up to it. What time did you go to work that day? A. Well, I worked all day, but I went down in the yards about 6:45 or 6:30, or somewhere between 6:30 and 7:00. We had a car of tobacco, a box car, sealed on both sides, that had been set in the K. C. S. yards on track No. 1, at what we call the north end of the yard, and there was four or five cars of cinders setting on what is known as the Casket track. That is about four tracks over from the car of tobacco, and about five or ten minutes to seven,—it was after dark—just good dark, there was

.a car same—I was laying over behind the car of cinders, that is, they were between me and the car of tobacco. There was a car come down to the ditch that is on the east side of the K. C. S. yards, and stopped, and stood there a minute and went on.

"Q. What kind of car? A. An automobile. I don't know what kind, but from the reflection of the lights I could tell it was either a coach or sedan, but could not tell the make of it, and in about a minute and a half there was two negroes came up across the yards from the east; that is, came from the direction of where the car stopped, and one of them—they went to the end—stopped close to the end of the tobacco car, the box car containing tobacco,—and said nothing. I don't know what they said, and couldn't hear them, but it looked like they stopped and made some motion or sign, and one of them came on over to the car of cinders, and he started looking around under the car, to see if he could see any one, I suppose, and the other one went to the box car that had the cigarettes in it, and he reached up to do something to the hasp. I could just see his form; I could not tell what he did, or anything, and about that time the other negro that came over to the car of cinders,— he had looked under them and didn't see any one, and he came around an end and looked down behind them, between the cars of cinders and the Casket Factory fence. I was standing just around the end of the north car of cinders. When this negro saw me I told him to step back there and be quiet, and he ran, and he ran back by the car— toward the car where the other negro was, and then the other negro left the car containing the cigarettes, and they began to run together. I could not tell which negro was which after that, and I hollered at them to halt, two or three times, and shot in the ground three or four times, and neither one stopped, and finally they got across the ditch, (off the railway right of way) which was about 65 or 70 yards from the box car, or possibly further. I was running with them all the time, trying to stop them, and I told them who I was. I saw they were going to get away, and I thought I would stop one of them and I shot at one of them and killed him."

Witness further testified that he did not know Lillian Ray at the time, but later learned his name; that Lillian Ray was not in the employ of the Kansas City Southern Railway Company at that time; that he was an employee of the Texas & Pacific Railway Company in the capacity of trucker at its warehouse. Witness further testified that when he got back to the box car in question the seal was broken. He did not state when or how long after the killing he examined the box car, nor when, if at any time, he had examined the car previous to the killing. On cross-examination the witness testified that people go through the railroad yards at the place in question, where the box car was located, at all hours of the night; that it is not unusual to see people going through there at 7 o'clock; that a lot of people work in town and walk through there every morning and night; that lots of people after supper go to the picture shows and on legitimate business through the yards.

 Claude Murrell, witness for defendant, testified that he was not an officer, but that he was with his brother, E. B. Murrell, at the time E. B. Murrell killed Lillian Ray; that witness was standing at one end of the box car of cinders and his brother was at the other end; that the tobacco car was out in front of them; that he was a little further from the tobacco car than his brother.

"Q. Did you or not see anybody fooling with the seal or the hasp on the car? A. Well, from where I was I saw the two negroes as they came up; as they came up to the end of the box car and then in the shadow of the box car—I could not see—it just cut me off from the box car, because the shadow of the car made it so dark I couldn't see nowhere. I just saw the two negroes at the end of the car."

It will be noted that the facts testified to are circumstantial in character of evidence, from which it is sought to establish the ultimate facts that the negroes had (1) broken a seal of the car, and (2) with the intention of entering and stealing tobacco therefrom—the offense of attempt to commit burglary. The circumstances which will amount to sufficient proof of an ultimate fact is not a matter of general definition. "The only legal test of which they are susceptible is their sufficiency to satisfy the mind and conscience of a jury." Burrell v. State, 18 Tex. 713, 733. "And, though the facts [testified to], be undisputed, the ultimate deduction therefrom may be a question for a jury." Albritton v. Commerce Farm Credit Co. (Tex.Civ.App.) 9 S.W. (2d) 193, 196. Especially would it appear so when, as here, the ultimate facts sought to be deducted involve the element of criminal intent. In any instance, to authorize the court to take the question from the jury

**380**

there must be no room for reasonable minds to differ as to the conclusion to be drawn from the evidence. Allison v. Campbell, 117 Tex. 277, 298 S.W. 523, 1 S.W.(2d) 866; Knox v. Brown (Tex.Com.App.) 16 S.W. (2d) 262. In Kirby Lumber Co. v. Temple Lumber Co., 125 Tex. 284, 83 S.W.(2d) 638, 642, Judge Critz has condensed the question here under consideration to the following two sentences: "It is impossible for us to announce any hard and fast standard by which it can always be absolutely determined when a fact is conclusively established so as to present a pure question of law. We can simply say that when the evidence is such that reasonable minds cannot differ as to its *verity* and *inference* it presents a law question only." (Italics ours.) It may be assumed that the circumstances testified to in this case were sufficient to have authorized the jury to conclude that the negroes had attempted to burglarize the box car, but the testimony is not so conclusive in credibility and cogency as to require the court to withdraw its determination from the jury, and thus say as a matter of pure law that the minds of reasonable men could draw but the one inference. For, in explanation of the circumstances under which he shot and killed the insured, it may not reasonably be said that the witness was wholly disinterested. His credibility and the weight to be given to his testimony was a matter for the jury. Nor do the facts, as testified to, point with such compelling force as to exclude any other reasonable conclusion than the one sought to be established by defendant below. It will be noted that to remove the suppositions and conclusions of the witness from his testimony there is left, in substance, the fact that he saw two negroes come across the railroad yards at a place frequently traveled by the public generally, day and night, in going from one part of the city to another; that one of them stopped near the box car and the other came near a car of cinders where witness was hiding; that witness told him to step back and be quiet; that both negroes ran, and one of them was shot by the witness. The inference is drawn by the witness that: "He (one of the negroes) reached up to do something to the hasp." But witness follows this with a statement: "I could just see his form; I could not tell what he did, or anything." Witness is corroborated in this last statement by his brother, who testified that the shadow of the box car in which the negro stood made it so dark he could not see anybody "fooling

with the seal or hasp." In Blum Milling Co. v. Moore-Seaver Grain Co. (Tex.Com. App.) 277 S.W. 78, it is said: "Neither a jury nor an appellate court on a proper review may rightly ignore physical conditions by which a witness is circumstanced, or the maxima potentialities of his vision." The testimony taken as a whole does not preclude the reasonable inference being drawn that the negroes in stopping near the box car had some other purpose in mind than to burglarize it. Therefore the learned trial judge correctly refused to direct a verdict or to enter judgment for the defendant non obstante veredicto. The verdict is not without sufficient support in the evidence.

The issue of law as to whether death resulting from justifiable homicide—though not named among the risks expressly excepted—is as a matter of law not a risk covered by a policy insuring against death "caused directly and independently of all other causes by violent and accidental means" passed out of the case on failure of the jury to find that the insured had attempted to burglarize the box car, and for that reason its discussion is pretermitted.

The second proposition of plaintiff in error contends that the trial court erred in failing and refusing to submit an issue to the jury inquiring in language of the policy as to whether or not the insured's death was caused by "accidental means."

Under this proposition the following statement is made: "At the close of the evidence and testimony in this cause, the defendant requested the submission by the court to the jury of a special issue as to whether the insured's death was 'caused independently of all other causes by violent and accidental means' in the wording of the policy provided for such. This request was denied and said issue was not submitted, to which action of the court defendant below excepted."

The record fails to show that defendant below filed any objections or exceptions to the court's charge as given or that it requested any special issue.

 As to whether fundamental error is shown in failure (without objections or exceptions or request for same) to submit an issue framed in the language of the policy inquiring whether insured's death was "caused independently of all other causes by violent and accidental means." The evidence of both plaintiff and defendant affirmatively established, and without dispute, that insured's death resulted instantly from gunshot wounds inflicted while running

from assailant, and thus "caused independently of all other causes by violent and accidental means" within the meaning of that expression as used in the policy, except it be, as contended by defendant below, that insured immediately preceding his death had attempted to burglarize a box car. No contention is made but that unprovoked homicide by gunshot wounds, intentionally or unintentionally inflicted, is death caused by "violent and accidental means" within the terms of the policy, as held by this court in National Life & Accident Ins. Co. v. Hodge, 244 S.W. 863. The only ground upon which the homicide was sought to be justified was that the insured, immediately before he was shot and killed, had attempted to burglarize a box car. That was the only issue controverted in the evidence. The issue submitted by the learned trial judge required the jury to determine that fact. All other facts showing a death caused by "violent and accidental means" were affirmatively established without dispute. Only disputed matters are required to be submitted to the jury. Hebert v. New Amsterdam Casualty Co. (Tex.Com.App.) 3 S.W.(2d) 425. The proposition is not sustained.

■ The third proposition of plaintiff in error contends that the trial court erred in entering judgment for statutory penalties and attorney's fees, because thirty days did not lapse after demand for payment of the loss and before filing the suit.

Plaintiff alleged:

"Plaintiff would show to the court that after the death of the said Lillian Ray * * * that plaintiff through her attorney, Wm. V. Brown, * * * did make written demand for the payment of the indemnity provided for under said certificate and/or policy * * * and that the defendant denied liability under the provisions of said policy * * * and that more than thirty days before the trial of this suit said demand was made in writing upon the defendant for the payment of said indemnity, which demand has been refused, and is still refused, and by reason hereof under the laws of the State of Texas, plaintiff is entitled to recover of and from the defendant, in addition to the face of said policy, 12% penalty, together with reasonable attorney fees, to be taxed as costs, which plaintiff alleges to be the sum of $500."

The petition was filed February 7, 1935. On trial of the case, had April 9, 1935, it was shown that the demand for payment of the loss was made by letter of date January 16, 1935, and that insurer replied by letter of date January 23, 1935, refusing payment of the loss and denying liability as follows:

"Dear Sir: Your letter of January 16th is acknowledged. The death of above named does not appear to have been due to accidental means and we therefore decline liability under the above certificate."

It was agreed that $250 was a reasonable attorney's fee. The court entered judgment for the full face value of the policy, $250 attorney's fees, and 12 per cent. penalty, to be taxed as costs.

R.S. art. 4736, as amended, Acts 1931, 42d Leg., p. 135, c. 91, § 1 (Vernon's Ann. Civ.St. art. 4736), reads as follows: "In all cases where a loss occurs and the life insurance company, or accident insurance company, or life and accident, health and accident, or life, health and accident insurance company liable therefor shall fail to pay the same within thirty days after demand therefor, such company shall be liable to pay the holder of such policy, in addition to the amount of the loss, twelve per cent damages on the amount of such loss together with reasonable attorney fees for the prosecution and collection of such loss. Such attorney fee shall be taxed as a part of the costs in the case. The Court in fixing such fees shall take into consideration all benefits to the insured incident to the prosecution of the suit, accrued and to accrue on account of such policy."

This suit was filed in less than thirty days after demand for payment of the loss was made. The trial was had more than thirty days after demand for payment, refusal to pay, and denial of liability. No demurrer or exception was urged to the pleadings. That demand was actually made, payment refused, and liability denied was proven without objection or exception. The sufficiency of the demand is now questioned only in the particular that thirty days did not lapse before filing of plaintiff's original petition on which the trial was had—together with defendant's answer denying any liability. The question is presented: May recovery of the statutory penalties and attorney's fees be had upon a demand made less than thirty days before the petition was filed, but more than thirty days before the trial is had, where payment is refused and liability is continued to be denied? In answering the question in the affirmative, we follow the decision by Judge Sharp in Washington Fidelity Co. v. Williams (Tex.Com.

App.) 49 S.W.(2d) 1093, 1094, holding: "Complaint is made that the trial court erred in rendering judgment for defendants in error for 12 per cent. damages and any attorney's fees, because there was no evidence that any *legal* demand had been made on plaintiff in error for the payment of the policy and payment refused. The record shows that defendants in error recovered a judgment for 12 per cent. damages as a penalty and $250 attorney's fees, which amounts were incorporated in the judgment. We have carefully read the statement of facts and fail to find any definite testimony showing that demand was made upon the insurance company for the payment of this policy until suit had been filed thereon. * * *

"However, it appears that actual demand was made of the insurance company for payment of the policy after suit was filed and more than thirty days before the trial, and payment thereof declined by the insurance company. Furthermore, in the answer filed in the suit by the insurance company, it denied liability on the policy. In the event a recovery is obtained for the principal sum stated in the policy, these facts, when properly alleged, authorize a recovery of 12 per cent. damages together with a reasonable attorney's fee for the prosecution and collection of such loss. This assignment is overruled."

Plaintiff relies upon the case of Universal Life & Accident Ins. Co. v. Ledezma (Tex. Civ.App.) 61 S.W.(2d) 165. In that case the attorney's fees and 12 per cent. penalty was denied upon a demand made December 24, 1930, suit filed January 21, 1931. The date of trial was not shown in the opinion of the court. We agree that recovery of attorney's fees and penalty could not be awarded upon trial had within thirty days after demand. The statute gives the insurer thirty days after demand within which to discharge its liability for the loss, and thus avoid the accruing of penalty and attorney's fees. And though a suit has been filed, the insurer may avoid incurring liability for the penalty and attorney's fees by paying or tendering payment of the loss before the expiration of thirty days after the demand. But we do not think the *filing* of the petition within less than thirty days after the demand has the effect to destroy the sufficiency of the demand otherwise properly made, alleged, and proven; and recovery may be had upon such a petition when the refusal of payment and denial of liability is continued to be insisted upon at a trial had more than thirty days after the demand.

By its fourth proposition, plaintiff in error seeks to invoke application of the laws of the state of New York as a defense to the plea for recovery of penalty and attorney's fees. It is contended: (1) That the contract of insurance sued upon is a New York contract; (2) that the laws of the state of New York do not authorize recovery of penalties or attorney's fees for failure to discharge liability under an insurance contract, as do the laws of Texas.

On trial of the case the following stipulation of facts was agreed to and incorporated in the statement of facts: "It is agreed between the plaintiff and defendant herein that this suit is based upon a certain Group Policy of insurance No. 37 G. A. D. D., being a contract between the Metropolitan Life Insurance Company, a New York Corporation, and the Texas and Pacific Railway Company, a Kentucky Corporation, and also based upon a certain certificate of insurance, both of said instruments having been introduced in evidence, said certificate having been issued by the Metropolitan Life Insurance Company to the Texas and Pacific Railway Company, and delivered by the Texas and Pacific Railway Company to the deceased, Lillian Ray; that said Group Policy of insurance was applied for, issued and delivered within the State of New York, and that under the laws of the State of New York no penalties or attorney's fees can be recovered for the failure to pay a policy of insurance in that State."

We do not pass upon the contention raised by this proposition for the reason that it is without support in the pleadings. The laws of the state of New York were not pleaded, therefore the judgment of the trial court may not be reversed for failure to sustain the defense sought to be established by the agreed facts. It appears to be the settled rule that where the laws of another state are sought to be invoked, as a means of recovery or as a grounds of defense, they must be *pleaded* as well as proven. In Western Union Tel. Co. v. Sloss, 45 Tex.Civ.App. 153, 100 S.W. 354, 355, it is said: "In order that the law of a different jurisdiction than that of the forum (being different from that of the forum) shall be applied in the case on trial, it must be both *alleged* and proven." (Italics ours.) In Atchison, T. & S. F. R. v. Pickens (Tex.Civ.App.) 118 S. W. 1133, error refused, it is held that in the absence of *pleadings* and proof as to the

law of another state the law of the forum will be applied. In National Cattle Loan Co. v. Armstrong (Tex.Civ.App.) 8 S.W. (2d) 767, 771, error refused, it is held: "It is a familiar rule that it is necessary to plead the law of another state if any relief is based thereon." In Cooper v. Loughlin, 75 Tex. 524, 13 S.W. 37, it is held: "Facts not alleged, though proved, can form no basis for judicial action."

The judgment of the trial court will be affirmed.