**REPUBLIC NATIONAL LIFE INSURANCE COMPANY, Petitioner,**

v.

**Velma L. HEYWARD, Respondent.**

**No. B-5621.**

Supreme Court of Texas.

April 14, 1976.

Rehearing Denied May 5, 1976.

Cobb, Thurmond & Bain, Earle Cobb, Jr. and J. W. Dewbre, San Antonio, for petitioner.

Oliver S. Heard, Jr., San Antonio, Thomas S. Goggan, III, Austin, for respondent.

DOUGHTY, Justice.

Velma L. Heyward was the named beneficiary of a group life insurance policy issued by Republic National Life Insurance Company and insuring the life of her husband, Bennie T. Heyward. She brought this suit to recover benefits under an accidental death rider to the policy. At the close of plaintiff's evidence the trial court instructed a verdict for Republic. The Court of Civil Appeals has reversed and remanded. Tex.Civ.App., 527 S.W.2d 807. We affirm the judgment of the Court of Civil Appeals.

The pertinent provisions of the accidental death rider are as follows:

If a person, while insured under this Section of the Group Policy, sustains an injury effected solely through external, violent and accidental means and as a result thereof, directly and independently of all other causes, suffers a loss specified below within ninety days following the date of such injury, the Company, subject to all provisions of the Group Policy, will pay

(a) the Principal Sum for loss of life;

. . .

\*     \*     \*     \*     \*     \*

Benefits shall not be payable for any loss to which a contributing cause is

\*     \*     \*     \*     \*     \*

(e) participation in or as the result of the commission of a felonious act.

The evidence introduced by plaintiff reveals that Bennie Heyward died on September 23, 1973, from multiple gunshot wounds. The Medical Examiner's Report shows that there were five gunshot wounds in his body,

two entering from the front and three from the back; in addition, there were multiple lacerations on his head and back made by a sharp object, possibly a knife. One 357 magnum bullet was recovered. The Medical Examiner's Report concluded that the manner of death was homicide. The Medical Examiner testified that in his opinion insured was intentionally shot by another.

Plaintiff's proof showed that at the time of his death Bennie Heyward was an employee of the City of San Antonio and was covered by the above Group Policy with the accidental death rider. Republic paid the basic $3,000.00 life insurance benefits to plaintiff, but refused to pay the additional $12,000.00 under the accidental death provisions.

Portions of the depositions of James Edda Anderson and Oscar M. Anderson were introduced into evidence. They both testified that they lived at 311 Vine Street (the place where insured's death occurred, according to the death certificate), but they refused to answer any other questions on the ground that their answers might tend to incriminate them.

Antone Dykes, an ordained minister, testified that he was acquainted with insured, and that his reputation for being a law-abiding citizen and a peaceful person was good.

Based on the above evidence the trial court directed a verdict for the insurance company. Republic contends that the directed verdict was proper because plaintiff failed to produce any evidence that Bennie Hayward died from injuries "effected solely through . . . accidental means," and alternatively because there was no evidence that "a contributing cause" of death was not "participation in or as the result of the commission of a felonious act."

## I.

The first issue presented by Republic's points of error is: does the above evidence, construed most favorably to plaintiff, raise a question of fact as to whether Bennie Heyward's death was accidental under the terms of the policy? Republic admits that the policy in question was in force at the time of insured's death. Republic also admits that plaintiff's evidence raised a fact issue as to whether insured's injuries were effected solely through violent and external means as those terms were used in the policy. Republic denies, however, that insured's injuries were "effected solely through . . . accidental means." No definition of the term "accidental means" is provided by the policy. Republic contends that, under the Texas cases defining similar provisions, a death is not effected solely through accidental means if it results from injuries intentionally inflicted by another.

In *Releford v. Reserve Life Insurance Co.*, 154 Tex. 228, 276 S.W.2d 517 (1955), insured died from injuries intentionally inflicted by his wife. Insured's policy provided indemnity against loss of life "resulting from accidental bodily injuries." Reversing the Court of Civil Appeals' judgment for the insurance company, this Court held that the court below had applied the wrong test to determine liability under the policy. The *Per Curiam* opinion states, at page 518:

> In reaching its conclusion the Court [of Civil Appeals] seems to have given controlling weight to its finding that "viewed from the standpoint of Velma Releford" the deceased was making an unlawful assault upon her and she was acting "in her own self-defense." As stated in the *Hutcherson* case [*Hutcherson v. Sovereign Camp, W.O.W.*, 112 Tex. 551, 251 S.W. 491 (1923)], *the test of whether the killing is accidental within the terms of an insurance policy is not to be determined from the viewpoint of the one who does the killing, but rather from the viewpoint of the insured.* If from his viewpoint his conduct was such that he should have anticipated that in all reasonable probability his wife would kill him, his death was not accidental; if from his viewpoint his conduct was not such as to cause him reasonably to believe that she would probably kill him, then his death was accidental. This was the jury question under the facts in this case. [Emphasis added]

This test (referred to below as the *Hutcherson* test) has been consistently followed in Texas to determine whether death intentionally caused by another is accidental within the meaning of an insurance policy. *Seaboard Life Insurance Co. v. Murphy*, 134 Tex. 165, 132 S.W.2d 393 (1939); *Spencer v. Southland Life Insurance Co.*, 340 S.W.2d 335 (Tex.Civ.App.—Fort Worth 1960, writ ref'd); *National Life & Accident Insurance Co. v. Hodge*, 244 S.W. 863 (Tex.Civ.App.—Texarkana 1922, no writ); *Great American Reserve Insurance Co. v. Sumner*, 464 S.W.2d 212 (Tex.Civ.App.—Tyler 1971, writ ref'd, n. r. e. ); *Ritchie v. John Hancock Mutual Life Insurance Co.*, 521 S.W.2d 367 (Tex.Civ.App.—Waco 1975, no writ). Under the *Hutcherson* test, Bennie Heyward's death might be accidental even though it resulted from injuries intentionally inflicted by another.

Republic contends, however, that the *Hutcherson* test does not apply where the policy covers death "by accidental means" rather than "accidental death." Republic cites numerous Texas cases which distinguish between coverage for accidental death and coverage for death by accidental means; Republic argues that under these authorities, where death results from the actions of another person, the death is not by accidental means unless the actor did not intend to inflict the fatal injuries. We disagree.

First, Republic cites no Texas authority, nor have we found any, for the proposition that injuries are not effected through accidental means merely because the assailant intentionally inflicted them. To the contrary, several Texas courts have applied the *Hutcherson* test to situations similar to the case at hand under very similar policy provisions. In *Texas Prudential Insurance Co. v. Turner*, 127 S.W.2d 563 (Tex.Civ.App.—Beaumont 1939, writ dism'd), insured died from gunshot wounds received in an affray. Insured's life insurance policy obligated insurer to pay double indemnity if insured's death resulted from bodily injury sustained "solely through external, violent and accidental means." The Court of Civil Appeals,

applying the *Hutcherson* test, held that insured's death was not sustained through accidental means because insured, "by his conduct on the occasion in question, provoked the difficulty with Garrett under conditions which would have led a reasonably prudent man to believe that Garrett would shoot him if he continued the assault." 127 S.W.2d at 566.

In *Life & Casualty Insurance Co. v. Martinez*, 299 S.W.2d 181 (Tex.Civ.App.—San Antonio 1957, no writ), the insured was shot by a police officer while fleeing from the officer. The court reversed and remanded for a new trial a judgment for the beneficiaries of insured's accident insurance policy, on the ground that the trial court did not apply the correct test to determine whether the insured's death was accidental. The policy in question covered death "from violent, external and accidental means." Citing *Releford, supra*, the court stated that the determination of whether the death was by accidental means must be determined from the viewpoint of the insured, and that the evidence presented a question of fact "whether insured, from his viewpoint, should have anticipated that in all reasonable probability the policeman would kill him if he did not stop." 299 S.W.2d at 183.

See also *Perry v. Aetna Life Insurance Co.*, 380 S.W.2d 868 (Tex.Civ.App.—Tyler 1964, writ ref'd, n. r. e.); *National Life and Accident Insurance Co. v. Knapp*, 430 S.W.2d 84 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd, n. r. e.); *Great National Insurance Co. v. Legg*, 444 S.W.2d 324 (Tex.Civ.App.—El Paso, 1969, writ ref'd, n. r. e.); *American National Insurance Co. v. Garrison*, 97 S.W.2d 534 (Tex.Civ.App.—Eastland 1936, writ dism'd); *Georgia Casualty Co. v. Shaw*, 197 S.W. 316 (Tex.Civ.App.—Galveston 1917, writ dism'd); *Metropolitan Life Insurance Co. v. Ray*, 105 S.W.2d 377 (Tex.Civ.App.—Texarkana 1937, no writ); *Stevenson v. Reliable Life Insurance Co.*, 427 S.W.2d 945 (Tex.Civ.App.—San Antonio 1968, no writ); *Old National Life Insurance Co. v. Holley*, 216 S.W.2d 676 (Tex.Civ.App.—Fort Worth 1949, no writ), and *Aetna Life Insurance*

*Co. v. Hagemyer*, 53 F.2d 636 (5th Cir. 1931), cert. denied, 285 U.S. 542, 52 S.Ct. 314, 76 L.Ed. 934 (1932).

Although *Praetorian Mutual Life Insurance Co. v. Humphrys*, 484 S.W.2d 413 (Tex. Civ.App.—Fort Worth 1972, writ ref'd, n. r. e.) has some language to the contrary, we believe that the result in that case is supportable on other grounds. In *Humphrys* insured was killed by a burglar when he unexpectedly came upon the burglar in his home. Insured's policy covered death by accidental means, but it also excluded coverage when death resulted from injuries intentionally inflicted by another person. This exclusionary provision, which is not present in Mr. Heyward's policy, clearly excluded Mr. Humphrys' death from coverage.

While the above cases are not controlling, they do indicate that a distinction between "accidental death" and "death by accidental means" has not been recognized where insured has died from injuries intentionally inflicted by another. In both "accidental death" and "accidental means" policies, the test applied has been the *Hutcherson* test: whether, from the viewpoint of the insured, he should have reasonably anticipated that his conduct would probably bring about his own death.

Several other jurisdictions which recognize a distinction between "accidental death" and "death by accidental means" also apply the *Hutcherson* test, or a similar rule, where the insured has died at the hands of another.[1] In fact, the *Hutcherson* test appears to be accepted by almost all jurisdictions to determine whether a homicide was accidental within the meaning of

an insurance policy. See Annot., 49 A.L. R.3d 673 (1973).

More important, however, we believe that a real distinction between the terms "accidental death" or "accidental injury" and "death by accidental means" is no longer recognized in Texas. The purported distinction between these terms originated in *United States Mutual Accident Ass'n v. Barry*, 131 U.S. 100, 9 S.Ct. 755, 33 L.Ed. 60 (1889). The Supreme Court in *Barry* affirmed the trial court's judgment that internal injuries suffered by an insured when he jumped from a platform were injuries "effected through external, violent and accidental means." The Court gave the following definition of "accidental means":

. . . [I]f a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual, occurs which produces the injury, then the injury has resulted through accidental means. 131 U.S. at 121, 9 S.Ct. at 762, 33 L.Ed. at 67.

Numerous Texas cases, following the reasoning of the Supreme Court in *Barry*, have recognized a distinction between "accidental death" and "death by accidental means." In *Bryant v. Continental Casualty Co.*, 107 Tex. 582, 182 S.W. 673 (1916), this Court held that death from sunstroke was death by accidental means within the meaning of the insurance policy. Citing *Barry*, we stated, at 182 S.W. 675–676:

1. See, e. g., *Aetna Life Insurance Co. v. Beasley*, 272 Ala. 153, 130 So.2d 178 (1961), in which the Alabama Supreme Court recognized a distinction between "accidental death" and "death by accidental means," but held that the determination of whether a homicide was by accidental means must be made from the viewpoint of the insured. The Delaware Supreme Court has recently reaffirmed a distinction between accidental death and accidental means in *Chelly v. Home Insurance Co.*, 285 A.2d 810 (Del.Superior Ct.1971), affirmed 293 A.2d 295 (Del.1972); but in *Maneval v. Lutheran Brotherhood*, 281 A.2d 502 (Del.Superior Ct.1971), the court held that whether a death was by

accidental means must be determined from the viewpoint of the insured. In *National Life & Accident Insurance Co. v. Jones*, 260 Ky. 404, 86 S.W.2d 139 (1935), the Kentucky Supreme Court distinguished between accidental death and death by accidental means, but held that the death of insured by gunshot wound received in an affray was nevertheless by accidental means if his death was the unintended and undesigned result of his own actions. See also *Hutton v. States Accident Insurance Co.*, 267 Ill. 267, 108 N.E. 296 (1915); *Freeman v. Commonwealth Life Insurance Co.*, 149 Ind. App. 211, 271 N.E.2d 177 (1971), affirmed, 259 Ind. 237, 286 N.E.2d 396 (1972).

The word "means" is employed in the policy in the sense of "cause"; the phrase, "due to accidental means," is one of qualification; and the purpose of its use in the ordinary accident policy is to limit the liability of the insurer to injuries effected by an accidental cause, as distinguished from those which are merely accidental in their result. . . . In the numerous adjudicated cases upon the subject, therefore, it is determined that where by the terms of the contract the risk insured against is an injury effected by "accidental means," the element of accident must consist in that which produces the injury, rather than the mere fact that an injury occurs.

This Court again recognized a distinction in *International Travelers' Ass'n v. Francis*, 119 Tex. 1, 23 S.W.2d 282 (1930). There we held that death from an infection resulting from the pulling of a wisdom tooth was caused solely and exclusively by "external, violent and accidental means" within the meaning of the policy. This Court there quoted with approval from Cooley's Briefs on Insurance (2d ed.) Vol. 6, p. 5234, as follows:

"Whether or not the means is accidental is determined by the character of its effects. Accidental means are those which produce effects which are not their natural and probable consequences. The natural consequence of means used is the consequence which ordinarily follows from its use—the result which may be reasonably anticipated from its use, and which ought to be expected. The probable consequence of the use of a given means is the consequence which is more likely to follow from its use than it is to fail to follow. An effect which is the natural and probable consequence of an act or course of action is not an accident, nor is it produced by accidental means. It is either the result of actual design, or it falls under the maxim that every man must be held to intend the natural and probable consequence of his deeds. On the other hand, an effect which is not the natural or probable consequence of the

means which produced it, an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of such means, an effect which the actor did not intend to produce and which he cannot be charged with the design of producing, is produced by accidental means. It is produced by means which was neither designed nor calculated to cause it. Such an effect is not the result of design, cannot be reasonably anticipated, is unexpected, and is produced by an unusual combination of fortuitous circumstances; in other words, it is produced by accidental means." 23 S.W.2d at 284–285.

Another leading Texas case is *Hanna v. Rio Grande National Life Ins. Co.*, 181 S.W.2d 908 (Tex.Civ.App.—Dallas 1944, writ ref'd). In *Hanna*, insured died from an overdose of sulfanilamide. Insured's policy provided for payment of double indemnity in event of death from bodily injury sustained solely through external, violent and accidental means. In her suit the beneficiary alleged that the overdose of the drug was by mistake, and alternatively that because of unknown elements in both the drug and the system of the insured, a fatal reaction to the drug ensued, causing insured's death. The trial court granted defendant's motion for judgment on the pleading, holding as a matter of law that the petition did not state a cause of action. The Court of Civil Appeals reversed and remanded for trial. The court recognized that:

Many jurisdictions hold that if the means which cause an injury are voluntarily employed in the usual and intended way, the resulting injury, even though it be entirely unusual, unexpected and unforeseen, is not produced by accidental means; in short, that the means, as well as the result, must be accidental; [citations omitted]. Other State authorities, however, apply to the term an interpretation of somewhat broader scope. It is stated in 1 C.J., p. 427, viz.: "Where the effect is not the natural and probable consequence of the means which produce it—an effect which does not ordinarily

follow and cannot be reasonably anticipated from the use of the means, or an effect which the actor did not intend to produce, and which he cannot be charged with a design of producing—it is produced by accidental means." At least since *International Travelers' Ass'n v. Francis,* 119 Tex. 1, 23 S.W.2d 282, 284, our Supreme Court has been committed to the latter or more liberal rule. 181 S.W.2d at 909–910.

See also *International Travelers' Ass'n v. Bettis,* 120 Tex. 67, 35 S.W.2d 1040 (1931); *International Travelers' Ass'n v. Marshall,* 131 Tex. 258, 114 S.W.2d 851 (1938). This test has become the accepted test in Texas for determining whether an injury or death resulted from accidental means.

Although Texas courts have continued to recognize at least in form a distinction between "accidental death" and "death by accidental means," as the definition of the term "death by accidental means" has become more inclusive any real distinction between the two terms has disappeared. This confusion was well documented by the dissenting opinion in *Pan American Life Insurance Co. v. Andrews,* 161 Tex. 391, 340 S.W.2d 787 (1960). In *Andrews,* the insured died by reason of a cerebral thrombosis allegedly resulting from a psychic trauma induced by watching his office being destroyed by fire. Insured was covered by two policies, both of which provided coverage for death as a consequence of bodily injuries "effected solely through external, violent and accidental means." This Court reversed the trial court's judgment for the beneficiary and rendered judgment for the insurance company on both policies. The decision contains three opinions: the majority opinion; a concurring opinion by one justice; and the dissenting opinion, in which three justices concurred. The majority held that there was no evidence that

insured had died from bodily injuries effected through *external* means, and thus never reached the question of whether insured had died through accidental means. The dissenting opinion concludes that the death was indeed by external and violent means, thus reaching the question of whether the death was by accidental means. After an exhaustive review of Texas cases on the subject, the dissenting justice concludes:

From the cases reviewed it clearly appears that the distinction once generally recognized between "accidental death" and "death produced by accidental means", as those terms are used in insurance contracts, no longer exists in this state. 340 S.W.2d at 802.

We agree with this conclusion. It is not necessary for us to repeat here the *Andrews* dissenting opinion's analysis of Texas cases construing "accidental means"; the reader is referred to that opinion for a more complete review. Suffice it to say here that these cases fail to reveal any real difference between the court's treatment of the terms as applied to the facts of the particular case.

The problems created by attempting to distinguish between accidental death and death by accidental means are not unique to Texas. There is a wide divergence of authority in other jurisdictions on the question, well documented in Annot., 166 A.L.R. 469 (1947). The author of this annotation lists twenty-three states as recognizing a distinction between "accidental death" and "accidental means," and ten states as regarding the terms to be legally synonymous. Subsequent to the writing of this annotation, however, at least two jurisdictions have repudiated the distinction formerly recognized in those states,[2] and four jurisdictions considering the question for the first time have refused to recognize any distinction.[3] And in those jurisdictions

---

**2.** See *Gaskins v. New York Life Insurance Co.,* 235 La. 461; 104 So.2d 171 (1958); *Beckham v. Travelers Insurance Co.,* 424 Pa. 107, 225 A.2d 532 (1967).

**3.** See *INA Life Insurance Co. v. Brundin,* 533 P.2d 236 (Alaska 1975); *Knight v. Metropolitan Life Insurance Co.,* 103 Ariz. 100, 437 P.2d 416 (1968); *Gulf Life Insurance Co. v. Nash,* 97 So.2d 4 (Fla.1957); and *Scott v. New Empire Insurance Co.,* 75 N.M. 81, 400 P.2d 953 (1965).

which still recognize the distinction, its application is sometimes far from clear.[4]

One other case illustrates the confusion caused by the attempt to distinguish between "accidental death" and "death by accidental means": *Landress v. Phoenix Mutual Life Insurance Co.*, 291 U.S. 491, 54 S.Ct. 461, 78 L.Ed. 934 (1934). In *Landress*, the Court held that death resulting from sunstroke was not death caused by external, violent and accidental means.[5] In his dissent, Justice Cardozo states:

> The attempted distinction between accidental results and accidental means will plunge this branch of the law into a Serbonian Bog. "Probably it is true to say that in the strictest sense and dealing with the region of physical nature there is no such thing as an accident." [Citations omitted] On the other hand, the average man is convinced that there is, and so certainly is the man who takes out a policy of accident insurance. It is his reading of the policy that is to be accepted as our guide, with the help of the established rule that ambiguities and uncertainties are to be resolved against the company. [Citations omitted] The proposed distinction will not survive the application of that test.
>
> 291 U.S. at 499, 54 S.Ct. at 463–464, 78 L.Ed. at 938.

Texas courts have waded through Justice Cardozo's Serbonian bog, and we are now convinced that the terms "accidental death" and "death by accidental means," as those terms are used in insurance policies, must be regarded as legally synonymous unless there is a definition in the insurance contract itself which requires a different construction. These terms in an insurance contract should be given their ordinary and popular meaning according to the understanding of the average man; the court's guide should not be the technical meaning of the words used, but rather the intention of the parties as inferred from the contract as a whole. A fine distinction between means and results would never occur to an average policyholder, and the insurer should not be able to escape liability by resort to such a technical definition. If the insurer wishes to distinguish between accidental results and injuries caused by accidental means, he should do so expressly, so as to give the policyholder clear notice of any limitations of liability which the insurer wishes to impose by use of the latter term. We therefore hold that injuries are "accidental" and within the coverage of an insurance policy—whether the policy speaks in terms of "accidental injuries" or "injuries effected through accidental means"—if, from the viewpoint of the insured, the injuries are not the natural and probable consequence of the action or occurrence which produced the injury; or in other words, if the injury could not reasonably be anticipated by insured, or would not ordinarily follow from the action or occurrence which caused the injury.

Applying this rule to the facts of the present case, it necessarily follows that, where an insured's injuries are caused by the intentional acts of another, the injuries are nevertheless accidental within the terms of an insurance policy covering death by "accidental means" if from the insured's viewpoint his conduct was not such as to cause him to reasonably believe that it would result in his injury. We believe that a person insured against injury effected through accidental means would consider himself insured against such a casualty, since the very purpose of such insurance is to provide indemnity against any fortuitous, unexpected, or undesigned injury. If a policyholder is struck by a car, can it be

---

4. See, e. g., *Cox v. Prudential Insurance Co.*, 172 Cal.App.2d 629, 343 P.2d 99 (1959); *Caldwell v. Travelers Insurance Co.*, 305 Mo. 619, 267 S.W. 907 (1924); *Linden Motor Freight Co. v. Travelers Insurance Co.*, 40 N.J. 511, 193 A.2d 217 (1963); *Perrine v. Prudential Insurance Co.*, 56 N.J. 120, 265 A.2d 521 (1970); *Hammer v. Mutual Benefit Health & Accident Ass'n*, 158 Ohio St. 394, 109 N.E.2d 649 (1952). See also footnote 1, *supra*.

5. Note that the opposite result was reached under very similar circumstances by this Court in *Bryant v. Continental Casualty Co., supra*, even though the courts allegedly applied the same test.

reasonably said that the means of injury are any less accidental, as regards the purpose of his accident policy, because the driver of the vehicle intended to injure him? We think not. In either case the purpose of the policy is the same—to insure against such an unexpected and unusual occurrence.

## II.

Republic contends that the trial court's directed verdict was correct—even under the *Hutcherson* rule—because plaintiff failed to prove a *prima facie* case of coverage under the accident provisions of the policy. Specifically, Republic argues that plaintiff failed to raise a question of fact whether insured's death was by accidental means, because plaintiff produced no evidence that insured did not provoke his assailant and thereby bring his death upon himself. Republic contends that the Court of Civil Appeals erroneously placed upon it the burden of proving that insured should have reasonably foreseen that his death would probably result from his actions.

■ The burden of proof was upon plaintiff to prove that insured died from injuries "effected solely through external, violent and accidental means" in order to recover under the policy. *International Travelers' Ass'n v. Marshall,* 131 Tex. 258, 114 S.W.2d 851 (1938). Plaintiff contends that her evidence showing death by violent and external means raises a presumption that death was by accidental means, and that this presumption raises an issue of fact whether the death was accidental, at least until defendant introduces evidence to the contrary. Republic does not deny that plaintiff has produced some evidence that insured's death was by violent and external means, but Republic does deny that this evidence raises a fact issue as to whether insured's death was accidental.

■ We have held that evidence of death by violent and external means raises a presumption that insured did not commit suicide. *Combined American Insurance Co. v. Blanton,* 163 Tex. 225, 353 S.W.2d 847 (1962). This presumption does not constitute evidence in itself or shift the burden of proof; it merely raises an issue of fact as to whether insured's death was not by his own hand. The presumption "disappears" when evidence to the contrary is introduced. *Prudential Insurance Co. of America v. Krayer,* 366 S.W.2d 779 (Tex.1963).

A presumption of accidental death from evidence of death by violent and external means has been recognized by some Texas courts—even where the evidence conclusively showed that the cause of death was not suicide. In *Georgia Casualty Co. v. Shaw,* 197 S.W. 316 (Tex.Civ.App.—Galveston 1917, writ dism'd), insured was killed from a gunshot wound received in an affray. The policy covered injuries effected through violent, external and accidental means. The Court of Civil Appeals affirmed a trial court judgment in favor of the beneficiaries, holding that there was some evidence that insured's death was caused by external, violent and accidental means. The Court stated, at page 318:

It is further true that the burden upon the whole case to make out their case as pleaded was upon appellees, and that it never shifted from them to appellant; but we think this burden was met by their proof that the death of the insured was caused by external and violent means, and that, as between them and the insurer, a presumption of law then arose that such death was caused by accidental means; . . . [Citations omitted]

See also *Home Benefit Ass'n v. Briggs,* 61 S.W.2d 867 (Tex.Civ.App.—Waco 1933, no writ); *Black v. Continental Casualty Co.,* 19 S.W.2d 69 (Tex.Civ.App.—Austin 1929, no writ); *Aetna Life Insurance Co. v. Hegemyer,* 53 F.2d 636 (5th Cir. 1931), cert. denied, 285 U.S. 542, 52 S.Ct. 314, 76 L.Ed. 934 (1932); *Mutual Life Insurance Co. of New York v. Sargent,* 51 F.2d 4 (5th Cir. 1931), and *Massachusetts Bonding and Insurance Co. v. Santee,* 62 F.2d 724 (9th Cir. 1933). This presumption has been recognized by the majority of American jurisdictions. Annot., 12 A.L.R.2d 1264 (1950).

■ There is no evidence in the case before us that insured provoked his assail-

ant or that he was the aggressor in the incident which resulted in his death. Unless some evidence to the contrary is produced, we think it is reasonable to presume that insured did not act in such a way that he should have reasonably known his actions would probably result in his death. The law assumes that one's natural instinct is to avoid injury and preserve his own life. We therefore hold that plaintiff's evidence raised an issue of fact whether insured's death was accidental.

### III.

Finally, Republic contends that the limitation in the policy excluding coverage where a contributing cause of the loss is "participation in or as the result of the commission of a felonious act" should apply in this case, because insured's death was the result of a felonious assault by his assailant. The Court of Civil Appeals held that insured must have been participating in or committing a felonious act for this limitation to be applicable. We agree. The fact that insured is killed by another, without more, does not bar recovery under this limitation. There is no evidence in the record that insured was engaged in a felonious act at the time of his death. While the burden of proof was upon plaintiff to show that the exclusion was not applicable, *Sherman v. Provident American Insurance Co.,* 421 S.W.2d 652 (Tex.1967), we believe it is reasonable to presume that insured's death was not caused by his participation in a felonious act until some evidence to the contrary appears. In the criminal law, one is presumed to be innocent of criminal conduct until proven guilty beyond a reasonable doubt. Even though the burden is still on the beneficiary to prove that insured was not engaged in criminal conduct which led to his death, he must be presumed innocent of any criminal conduct until some evidence to the contrary is produced. See *New York Life Insurance Co. v. Veith,* 192 S.W. 605 (Tex.Civ.App.—San Antonio 1917, no writ). Like the presumption against suicide, this presumption of innocence would entitle the jury to find, absent any evidence to the contrary, that insured's death was not excluded from coverage under this limitation of the policy. The trial court's instructed verdict was therefore improper.

The judgment of the Court of Civil Appeals is affirmed.