The RELIABLE LIFE INSURANCE COMPANY, Appellant,

v.

Connie RIVERA, Appellee.

No. 17133.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Aug. 17, 1978.

Barrow, Bland & Rehmet, Robert S. MacIntyre, Jr., Houston, for appellant.

Blaine & Carroll, Victor R. Blaine, Houston, for appellee.

EVANS, Justice.

A "grudge fight" involving four men at Sylvia's Lounge on November 10, 1973, left Roy Rivera dead from a gunshot wound in his chest. His widow, Connie Rivera brought this action against The Reliable Life Insurance Company to recover accidental death benefits under a policy issued on her husband's life. The insurance company defended on the basis of a policy limitation which provides that "no accidental death benefit will be payable if death results directly or indirectly from, or is caused by or contributed to by . . . committing or attempting to commit an assault or felony."

In response to special issues, the jury found that Rivera was not illegally carrying a handgun on the occasion in question and that he had not assaulted or attempted to assault either Manuel Gonzales or Justo Hernandez, two of the participants in the fight. The trial court entered judgment on the jury's verdict, awarding Connie Rivera the sum of $5000.00 as accidental death benefits payable under the policy, plus a 12% penalty as provided by Texas Insurance Code, Article 3.62, and attorney's fees. The Reliable Life Insurance Company brings this appeal, contending that the evidence is legally and factually insufficient to support the jury's findings.

In an action on an insurance policy the burden of proof is upon the insured to negative the exclusions and limitations contained in the policy which are pleaded as a defense by the insurance company. *Sherman v. Provident American Insurance Co.,* 421 S.W.2d 652, 654 (Tex.1967). Thus, the burden of proof was upon Mrs. Rivera to establish by a preponderance of the evidence that her husband's death was not caused by or contributed to by a criminal act on his part in committing or attempting to commit an assault or felony.

Mrs. Rivera met this burden in her case in chief by making a prima facie showing of the existence of the policy and that her husband had died as a result of a gunshot wound. A presumption exists that the insured is innocent of any criminal conduct, and in the absence of any evidence to the contrary, the jury was entitled to find that the insured was not engaged in a criminal act at the time of his death. *Republic National Life Insurance Co. v. Heyward,* 536 S.W.2d 549, 559 (Tex.1976).

The presumption of an insured's innocence merely raises an issue of fact to go before the jury where no contrary evidence is produced. It does not constitute evidence

in itself nor does it shift the burden of proof. *Prudential Insurance Co. of America v. Krayer*, 366 S.W.2d 779 (Tex.1963). *Republic National Life Insurance Co. v. Heyward*, supra. The insurance company's position in the case at bar is that it rebutted the presumption of innocence by proof that the insured was involved in a criminal act within the meaning of the policy limitation.

The insured, Roy Rivera, was sometimes employed as a carpenter by his friend, Daniel Ramirez, and occasionally the two men stopped to drink beer together after work. On the evening in question they had several beers at a place near their work, and on their way home, they stopped at Sylvia's Lounge for another beer. According to Ramirez' testimony, Rivera was a "nice easy going person who did not start trouble with people." The two men were friends and Ramirez felt that each would come to the other's assistance if one were in trouble.

When the fight started, Ramirez and Rivera were just beginning to play a game of pool. Rivera was standing across the table from Ramirez and was watching Ramirez get ready "to shoot". Ramirez testified that just as he was about to make his "shot", he felt somebody hit him from behind and knock him down. The person who hit him was his second cousin, Manuel Gonzales, with whom he had a previous quarrel. As Ramirez tried to get up, Gonzales shot him. Gonzales did not say anything to Ramirez, just kicked him and when he tried to get up, shot him. Ramirez said that he had a prior dispute with Gonzales which resulted from his telling Gonzales to keep away from his house. On a prior occasion at Sylvia's Lounge, Gonzales had tried to pick a fight with him and with his stepson. Ramirez said he thought Gonzales knew Rivera but that Rivera was not aware of his dispute with Gonzales. He knew of no reason why Gonzales would have a grudge against Rivera. Ramirez said he did not have a gun with him on the evening in question, and he did not see Rivera with a gun.

Manuel Gonzales acknowledged that he had "an old fight" with Ramirez and that there was an understanding between them that "the next time we see each other, that was going to be it." He said he went over to where Ramirez was and kicked him, and they started fighting. His friend, Justo Hernandez, who knew of his dispute with Ramirez and who had agreed to assist him in a fight with Ramirez, joined in the affray. He said that while he was fighting with Ramirez, Rivera shot at him twice and that one of the shots "barely creased" his neck. He said that he had his own gun, a .32 caliber pistol, which he had carried with him since his prior argument with Ramirez, but that he did not pull his gun until after he had been shot by Rivera. He shot Rivera, saw him fall and then "came back" and saw Ramirez on top of Hernandez. He said he didn't know Hernandez was already shot so he went ahead and shot Ramirez too. Gonzales was indicted for the murder of Rivera and for assault to murder Ramirez. The murder charge was dropped, but Gonzales was tried and found guilty of the offense of assault to murder.

Ruben Flores, the owner of Sylvia's Lounge, testified that there were about 40 people in the lounge at the time the fight started. He said he saw Gonzales and another man fighting and he started over to them to break up the fight. He then heard a commotion to his right, on the other side of the pool table where Hernandez was fighting with a man he did not know, and he heard two shots come from that direction. Gonzales then started shooting and shot "both of them." About eight or nine shots were fired in all. When the shooting stopped, Hernandez and Gonzales told him "I'll see you", and he told Gonzales not to leave. Both Gonzales and Hernandez then left the bar, leaving the other men lying on the floor. Hernandez' wife then came to Flores and said that her husband was outside, and Flores then went outside and found Hernandez was already dead. There was a gun left in the lounge near one of the men who had been shot. Gonzales took his gun with him when he left the lounge. Hernandez did not have a gun, but Flores did not know whether he had a gun when he came into the lounge. Flores did

not know who started the fight, and he had his eyes directed on the fight between Gonzales and Ramirez when he heard the commotion to his right. Flores did not know if one of the men in the fight "took a pistol from another one, or whether a man pulled it out of his pocket, or where it came from." The first time he ever saw the pistol it was lying on the floor, and the only man he saw with a pistol was Gonzales.

Mrs. Marie Rosa Hernandez, the widow of Justo Hernandez, testified that prior to the time she and her husband went to Sylvia's Lounge on the evening in question, her husband had been doing some work on a truck belonging to Manuel Gonzales. She said Gonzales came over to the table at which she and her husband were sitting and told her husband to help him fight with the two guys who were playing pool. She said that after the fight started between Gonzales and Ramirez, her husband held "the other guy so they can stop the fight or something." Gonzales and the other man kept on fighting, and then the shooting started. She saw that Gonzales had a gun, but she did not see Rivera with a gun. When Gonzales started fighting with Ramirez her husband held Rivera back. However, Rivera had not started walking toward the men who were fighting. She said her husband was larger than Rivera and had no trouble holding him back on the pool table. She said "they were not fighting or doing nothing. He was just holding him back." After Gonzales put Ramirez on the floor, he started shooting and Flores told her to hide behind the bar. Afterward, her husband walked outside and Gonzales went to a phone near the doorway and was making a call with a gun in his hand. She first believed her husband was all right, but after he went home and opened the door, he fell over on the floor.

Mrs. Connie Rivera testified that her husband did not own a pistol and had never owned any kind of firearm. He had a good reputation for being peaceful and law abiding and was not an aggressive type of person.

The testimony in the record leaves considerable doubt as to the participants' respective actions during the fight. Much of the testimony is related to a blackboard diagram depicting the·scene of the affray, and since this diagram is not in evidence the testimony is not presented with the same degree of clarity as when offered in the trial court.

■■■■ It does appear from the evidence that two pistols were involved in the fight, and the jury could reasonably have concluded from the evidence that Rivera possessed one of such pistols and fired the shots as claimed by Gonzales. However, there was testimony indicating the Rivera did not have a pistol, and the jury was at liberty to believe that testimony and to reject the testimony to the contrary. It was the jury's responsibility to weigh all of the evidence presented and to accept that testimony which it found to be most credible.

Furthermore, the jury was not compelled to find that Rivera's actions were illegal even if it determined that he had a pistol in his possession. Where an accused does not carry a pistol to the place of difficulty and receives possession only after the fight begins, it has been held that a felony offense for illegally carrying a pistol does not lie under Texas Penal Code, Section 46.02; *Lilly v. State*, 102 Tex.Cr.R. 606, 279 S.W. 267 (1926); *Guy v. State*, 74 Tex.Cr.R. 620, 170 S.W. 303 (1914). Moreover the jury could have concluded from the evidence and under the court's instructions that Rivera acted in self defense. Self defense is the same in both criminal and civil cases, except that in criminal cases the accused is given the benefit of a reasonable doubt. *Fambrough v. Wagley*, 140 Tex. 577, 179 S.W.2d 478 (1943); *March v. Walter*, 48 Tex. 372 (1877). There was evidence from which the jury could have concluded that Rivera acted reasonably to protect his fiend, Ramirez, from injury at the hands of Gonzales, and if his actions were justified, he would not have been guilty of an assault. *Reeves v. State*, 217 S.W.2d 19 (Tex.Crim.App.1949). It was for the jury to determine from the facts whether Rivera's actions were justified.

*Saldivar v. State*, 187 S.W.2d 996, 997 (Tex. Crim.App.1945).

The trial court's judgment is affirmed.