Eugene JOHNSON, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. B14–91–01388–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 3, 1992.

Rehearing Denied Jan. 7, 1993.

Jim Sharp, Jr., Houston, for appellant.

Carol M. Cameron, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and SEARS and ELLIS, JJ.

## OPINION

ELLIS, Justice.

We withdraw our opinion of October 1, 1992, and substitute the following opinion.

Appellant, Eugene Johnson, Jr., appeals his judgment of conviction for the offense of possession of a controlled substance, namely, cocaine, weighing less than twenty eight (28) grams by aggregate weight, including any adulterants and dilutants. TEX.HEALTH & SAFETY CODE ANN. § 481.-102(3)(D) and § 481.115(a), (b) (Vernon 1992). The jury rejected appellant's not guilty plea and the Court, after finding the two enhancement paragraphs of the indictment to be true, assessed punishment at twenty five (25) years in the Institutional Division of the Texas Department of Criminal Justice. We affirm.

In his sole point of error, appellant asserts that the evidence is insufficient to support the judgment that he knowingly possessed cocaine. The standard for reviewing the sufficiency of the evidence is whether, when viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Geesa v. State*, 820 S.W.2d 154, 155 (Tex.Crim.App. 1991).

The relevant facts are as follows: Officer J.H. Guidry of the Houston Police Department, is assigned to the Special Operations Division, High-rise Surveillance Section, in which officers set up in an office building in the downtown area and conduct surveillance of parking lots for offenses, e.g., auto theft, burglary of coin machines, purse snatchings. On September 5, 1991, at approximately 8:45 a.m., Officer Guidry, while on the 28th Floor of the Chevron Tower located in the 1300 block of McKinney, Houston, Texas, observed (with the use of binoculars) appellant squat down in front of a parking lot pay box located in

the 700 block of LaBranch Street. Appellant was looking into the slots where the money is deposited. Guidry described appellant as being a black male wearing a black and white ball cap, a purple t-shirt, blue jeans, and tennis shoes. Appellant reached into his right rear pocket and retrieved what appeared to be a piece of wire. Appellant inserted the wire into the open slots and removed what appeared to be paper money.

Appellant stood up, placed the paper money in his right pocket, and placed the wire in his left pocket. Appellant exited the parking lot, walked across the street into another parking lot, and headed towards the money box at that location. Guidry advised the ground unit by radio of what he had observed and the location and description of appellant.

Officer Darryl G. Duggan of the Houston Police Department, responded to Guidry's radio call. Duggan observed appellant, who was at a machine in the 700 block of LaBranch, remove a dollar bill with a pick, an instrument used to reach inside a money slot to remove money. Appellant turned around, saw Officer Duggan, and took off walking. Duggan then apprehended and arrested appellant.

Duggan patted down appellant and recovered from his right front pocket a glass tube with wire mesh inside. He recovered from appellant's right watch pocket two $1.00 bills that had been rolled or folded, similar to money that had been placed inside a parking lot pay box. Duggan recovered from appellant's left front pocket a wire approximately eight to ten inches long, the same object appellant used to remove dollar bills from the boxes.

Duggan testified he has observed drug paraphernalia, controlled substances, crack cocaine pipes, and crack cocaine on many occasions and is familiar with the use of crack cocaine pipes. Duggan explained that a small rock of crack cocaine, about the size of an eraser head, is placed inside the pipe with a wire mesh to prevent the rock from passing all the way through and then a cigarette lighter is used to light it. A typical crack cocaine pipe consists of: a tube, wire mesh, and cocaine. Typically, there is a small amount of residue from the cocaine on the pipe which is observable, indicating the pipe has been heated to smoke the crack cocaine.

Officer Duggan, based upon his experience and training, determined the glass tube with mesh inside to be a crack cocaine pipe. Duggan observed what he believed to be burned crack residue in the glass pipe and a blackening of the glass. Officer Duggan took the glass pipe to the narcotics officer of the Houston Police Department where it was field tested.

Cynthia E. Gary, chemist of the Houston Police Department Crime Lab, testified that she has conducted analyses of substances on crack cocaine pipes on many occasions. Gary described the glass tube pipe that contains a wire gauze, as what is commonly called a crack pipe. Gary observed residue inside the pipe. Gary conducted an analysis on the contents of the pipe and the residue in the crack pipe tested positive for cocaine. She removed the residue from the pipe by washing it with an acid and conducted an analysis of the substance. Gary determined the crack cocaine pipe contained 1.5 milligrams cocaine.

■ Where a defendant is charged with unlawful possession of a controlled substance, the State must prove two elements: (1) that the defendant exercised care, control and management over the contraband; and (2) that the defendant knew the matter was contraband. *Martin v. State*, 753 S.W.2d 384, 387 (Tex.Crim.App.1988).

■ There is no minimum weight required to sustain a conviction for possession of narcotics. *Jackson v. State*, 807 S.W.2d 387, 389 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd). Possession of minute amounts of a controlled substance is sufficient to sustain a conviction if the amount possessed is capable of being measured. *Lavigne v. State*, 782 S.W.2d 253, 256 (Tex.App.—Houston [14th Dist.] 1989, affirmed); 803 S.W.2d 302 (Tex.Crim.App. 1990). The issue is whether the evidence adduced will support a reasonable inference that the defendant knowingly pos-

sessed the contraband. *Jackson, supra.* If the controlled substance can be seen and measured, the amount is sufficient to establish the defendant knew it was a controlled substance. *Mayes v. State,* 831 S.W.2d 5, 7 (Tex.App.—Houston [1st Dist.] 1992, no pet.); *Jarrett v. State,* 818 S.W.2d 847, 848 (Tex.App.—Houston [14th Dist.] 1991, no pet.); *Thomas v. State,* 807 S.W.2d 786, 789 (Tex.App.—Houston [1st Dist.] 1991, pet. granted). *Sims v. State,* 833 S.W.2d 281 (Tex.App.—Houston [14th Dist.] 1992, pet. pending). In the instant case the cocaine could be seen and measured.

■ The arresting officer and the chemist observed the cocaine residue. Officer Duggan observed burned crack residue in the glass pipe. Gary observed residue inside the glass pipe. *See Sims, supra* at 284 (chemist observed residue in the cocaine pipe with the naked eye); *Jarrett, supra,* at 848 (officer observed residue inside crack pipe but chemist found no visible cocaine on the pipe); *Mayes, supra,* at 7 (both officer and chemist observed cocaine residue); *Thomas, supra,* at 787–788 (officer and chemist observed cocaine residue visible to the naked eye); *Chavez v. State,* 768 S.W.2d 366, 368 (Tex.App.—Houston [14th Dist.] 1989, pet. ref'd) (officer observed cocaine without the need of a microscope).

The chemist quantitatively measured the cocaine. Gary measured the cocaine to determine it weighed 1.5 milligrams. Quantities less than the quantity in the instant case have been upheld as being sufficient to support a conviction. *See Sims, supra,* at 283 (0.4 milligrams); *Mayes, supra,* at 6 (0.2 milligrams); *Jackson, supra* (1.2 milligrams); *Thomas, supra* (0.8 milligrams); *Chavez, supra* (0.5 milligrams); *Alejandro v. State,* 725 S.W.2d 510, 511 (Tex.App.—Houston [1st Dist.] 1987, no pet.) (0.3 milligrams).

The cocaine was inside a crack cocaine pipe. "Drug paraphernalia" means equipment, a product, or material that is used or intended for use in ingesting, inhaling, or otherwise introducing into the human body a controlled substance. See TEX.HEALTH &

SAFETY CODE ANN. § 481.002(17)(L)(i) (Vernon 1992). Appellant had knowledge of cocaine located inside drug paraphernalia, namely, a glass crack cocaine pipe with a screen. *See Sims, supra,* at 284 (defendant possessed cocaine inside crack pipe found on his person); *Jarrett, supra,* at 848–849 (defendant possessed cocaine inside a crack pipe, which constitutes drug paraphernalia).

The cocaine was inside a crack cocaine pipe recovered from appellant's right front pocket. *See Mayes, supra,* at 7 (defendant possessed cocaine inside a glass crack pipe in his front pants pocket); *Thomas, supra,* at 788–789 (defendant possessed cocaine on his person); *Chavez, supra,* at 368 (defendant possessed cocaine in a small plastic baggie in the defendant's back pocket).

The jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Penagraph v. State,* 623 S.W.2d 341, 343 (Tex.Crim.App.1981). The jury, being the judges of the facts and credibility of the witnesses, could choose to believe or not believe the witnesses, or any portion of their testimony. *Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App.1986), *cert. denied,* 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988). The jury, having found the appellant guilty of possession of cocaine, necessarily believed Officer Duggan and Cynthia Gary.

After viewing the evidence in the light most favorable to the prosecution, it is clear beyond a reasonable doubt that appellant knowingly possessed cocaine, and that the evidence is sufficient to support his conviction. Appellant's sole point of error is overruled.

Accordingly, the judgment of the trial court is affirmed.

J. CURTISS BROWN, C.J., dissents without opinion.