ERS v. Cash 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00483-CV







Employees Retirement System of Texas; Blue Cross and Blue Shield; and 


Group Life & Health Insurance Company, Inc., Appellants



v.



Selena D. Cash, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT


NO. 93-09095, HONORABLE JOSEPH H. HART, JUDGE PRESIDING







 Appellants Blue Cross and Blue Shield and Group Life & Health Insurance
Company, Inc. ("the insurers") denied accidental death benefits to Selena Cash, appellee. 
Appellant the Employees Retirement System of Texas ("ERS") upheld the insurers' denial of
benefits on the grounds that: (1) the insured's drug overdose death was not accidental; and (2) the
policies' "felonious activity" exclusions precluded benefits. Cash sued in district court for judicial
review of the ERS's decision. Concluding that the ERS decision was not supported by substantial
evidence on either of the stated bases, the district court reversed the ERS's order. We will
reverse the district-court judgment and affirm the ERS's order.


FACTUAL AND PROCEDURAL BACKGROUND


 On November 1, 1990, Selena Cash's husband, Marion Marshall, died of
methadone and cocaine intoxication. As a state employee, Marshall was enrolled in the ERS
Uniform Group Insurance Program, which included an "accidental death and dismemberment"
policy and a "voluntary accident insurance" policy. Following Marshall's death, Cash filed a
claim with Group Life & Health Company, a Blue Cross and Blue Shield subsidiary, for
accidental death benefits under the policies. The insurers denied her claim on the basis that the
death was not accidental and that the policies' felonious-activity exclusions precluded coverage. 
The Executive Director of ERS upheld the denial.

 Cash appealed this decision to the ERS Board of Trustees. The appeal was referred
to the State Office of Administrative Hearings for a contested-case hearing. After the hearing,
the administrative law judge recommended to the ERS Trustees that Cash's appeal be granted. 
The Trustees declined to adopt the ALJ's proposal for decision and adopted their own findings
of fact and conclusions of law denying the claim. Cash then brought this suit in district court for
judicial review of the Trustees' decision. (1)

 The district court reversed the Trustees' decision on the grounds that: (1) the
administrative record did not contain substantial evidence to support the ERS's finding that the
insured's death was not accidental; and (2) the ERS erred in applying the felony exclusion
because, as a matter of law, mere presence of illegal drugs in the blood does not constitute
substantial evidence that the insured was engaged in felonious conduct causing his death. ERS
and the insurers (collectively "Appellants") challenge both of these conclusions. Cash also raises
one cross-point concerning attorney's fees.


FELONIOUS-ACTIVITY EXCLUSION


 The insurance policies in question contained the following exclusion: "This
Supplementary Contract does not cover loss caused by or resulting from any one or more of the
following: . . . (F) Loss occurring while engaged in any felonious activity." Appellants contend
that the trial court erred in finding that there was not substantial evidence to support the ERS's
decision that the insured's death was caused by, or resulted from, the insured's engaging in
felonious activity. We agree.

 Our supreme court has described the burdens of proof and presumptions to be
applied when an insurer invokes a felony exclusion. See Republic Nat'l Life Ins. Co. v. Heyward,
536 S.W.2d 549, 559 (Tex. 1976). Once the exclusion is raised by the insurer and supported by
the introduction of "some evidence," the burden of proof rests on the beneficiary to show that the
felonious-activity exclusion is not applicable: "Even though the burden is still on the beneficiary
to prove that insured was not engaged in criminal conduct which led to his death, he must be
presumed innocent of any criminal conduct until some evidence to the contrary is produced." Id.
(emphasis added). 

 Applying Heyward to this case, when the insurers invoked the felony exclusion,
Cash had the burden of proof to show that the exclusion was not applicable. However, the
deceased is presumed innocent of felonious conduct, unless the insurers produce some evidence
to the contrary. Thus our inquiry is focused on: (1) whether there is some evidence of felonious
conduct to overcome the innocence presumption and, if so, (2) whether Cash met her burden of
proof that the felonious-activity exclusion was inapplicable. 

 Given the posture of this administrative appeal, both of these questions must be
analyzed through the prism of substantial-evidence review. In conducting a substantial-evidence
review, we must determine whether the evidence as a whole is such that reasonable minds could
have reached the conclusion the agency must have reached in order to take the disputed action. 
Texas State Bd. of Dental Examiners v. Sizemore, 759 S.W.2d 114, 116 (Tex. 1988), cert. denied,
490 U.S. 1080 (1989); Texas Health Facilities Comm'n v. Charter Medical-Dallas, Inc., 665
S.W.2d 446, 453 (Tex. 1984). We may not substitute our judgment for that of the agency and
may consider only the record on which the agency based its decision. Sizemore, 759 S.W.2d at
116. If substantial evidence would support either affirmative or negative findings, we must
resolve any conflicts in favor of the agency decision and uphold the decision. Auto Convoy Co.
v. Railroad Comm'n, 507 S.W.2d 718, 722 (Tex. 1974).

 The ERS made the following findings: at the time of death, the insured had .3
milligrams of methadone and .01 milligrams of cocaine per liter of blood in his body; the insured
died as a result of methadone and cocaine intoxication; possession of either cocaine or methadone,
without a prescription, is a felony; preceding ingestion, the insured possessed these illegal drugs,
thereby engaging in a felony; Cash presented no evidence that the drug ingestion was involuntary
or accidental. Consequently, the ERS concluded that by a preponderance of the evidence the
insured was engaged in a felony that resulted in his death, thereby falling within the felonious-activity exclusion.

 Our review of the agency record under a substantial-evidence review reveals ample
evidence to support these findings. The death certificate listed the immediate cause of death as
"Methadone and cocaine intoxication." No additional underlying causes were noted. Under the
heading, "Describe How Injury Occurred," the death certificate stated: "Drug overdose." The
Medical Examiner's report concluded that the insured "came to his death as a result of methadone
and cocaine intoxication." An addendum to the report described the manner of death as "Drug
overdose. By his own hand." The Medical Examiner's toxicological findings showed
concentrations of .01 milligrams of cocaine and .3 milligrams of methadone per liter of the
deceased's blood. In fact, there is no dispute that the insured's death was the result of a
methadone/cocaine overdose. 

 The controversy here is whether the uncontroverted evidence of illegal drugs in the
deceased's bloodstream is "some evidence" that before his death he possessed controlled
substances, a felonious activity. If this were a criminal case, the state's burden would be clear. 
To establish unlawful possession of a controlled substance, the state must prove beyond a
reasonable doubt that the accused (1) exercised care, control, and management over the
contraband; and (2) knew the matter possessed was contraband. Joseph v. State, 897 S.W.2d 374,
376 (Tex. Crim. App. 1995); King v. State, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995);
Martin v. State, 753 S.W.2d 384, 387 (Tex. Crim. App. 1988). Because of this heavy burden,
no Texas court has held that a person could be convicted of possession of narcotics solely because
of residual drugs found in his body. See Jackson v. State, 833 S.W.2d 220, 223 (Tex.
App.Houston [14th Dist.] 1992, pet. ref'd). In Jackson, the results of a test for drugs in the
body were held not to satisfy, without more, the elements of possession. Id. It was thought that
under such circumstances neither control nor knowledge could be proved beyond a reasonable
doubt. Id. at 226. Once the drugs are in the bloodstream, the accused arguably lacks control over
them. Likewise, the drugs might have been taken involuntarily or accidentally, thereby negating
knowing possession. In the present case, the trial court relied on Jackson in concluding that
evidence of a controlled substance in the body does not constitute "some evidence" of a felony to
overcome the presumption of innocence. Cash continues to assert that the reasoning employed
in Jackson should control the outcome here. We disagree.

 In Jackson, the court of appeals reversed a defendant's possession conviction that
was based on the presence of .04 milligrams of cocaine in the liver of her stillborn baby. Id. at
222, 226. Jackson does not, however, stand for the proposition that the presence of drugs in the
bloodstream is, as a matter of law, no evidence of prior possession. Indeed, a careful reading of
Jackson shows that the court felt that although bloodstream presence is some evidence of prior
possession, additional evidence would be necessary for the state to convict beyond a reasonable
doubt. Id. at 223-26. The out-of-state authorities on which Jackson relied expressly so hold. See
State v. Flinchpaugh, 659 P.2d 208, 212 (Kan. 1983) (presence of drugs in bloodstream is
circumstantial evidence of prior possession, but not sufficient by itself to establish guilt beyond
reasonable doubt); State v. Vorm, 570 N.E.2d 109, 110 (Ind. Ct. App. 1991) (presence of cocaine
in urine sample is circumstantial evidence of possession, but not enough, without additional
evidence, to prove possession beyond reasonable doubt); State v. Lewis, 394 N.W.2d 212, 217
(Minn. Ct. App. 1986) (presence of controlled substance in urine not sufficient to prove prior
possession beyond reasonable doubt, absent corroborating evidence).

 Thus, the rule in Texas appears to be that the presence of drugs in the bloodstream
is circumstantial evidence of prior possession, but that additional evidence is required to convict
beyond a reasonable doubt. See Nelson v. State, 881 S.W.2d 97, 100 (Tex. App.Houston [1st
Dist.] 1994, pet. ref'd) (evidence sufficient to sustain conviction where urine tested positive for
cocaine, officer saw accused cup his hand to his mouth, and pieces of chips of unidentified white
rock were visible on accused's teeth). Clearly, however, it is the beyond-a-reasonable-doubt
burden inherent in a criminal prosecution that restricts conviction based solely on bloodstream
presence. In the present case, the insurers are not surrogates for the state and do not have the
state's criminal burden. Likewise, the ERS Trustees did not have to be convinced beyond a
reasonable doubt. Rather, under Heyward there must only be "some evidence" that the insured
was engaged in a felony causing his death. We believe the undisputed fact that the insured died
of an overdose of illegal drugs is some evidence, albeit circumstantial, of prior possession.

 With the presence of some evidence tending to show that Marshall's participation
in felonious activity caused his death, the presumption of innocence fades, and under the Heyward
rule the burden shifts to Cash. In order to meet this burden, Cash was required under the
circumstances of this case to show either that the drugs were not contraband or that they were
somehow not knowingly possessed because of accidental or involuntary ingestion. She did
neither.

 Cash presented no evidence that the chemicals were not illegal contraband. It is
undisputed that possession of either cocaine or methadone without a valid prescription is a felony
offense. See Tex. Health & Safety Code Ann. § 481.102 (West 1992) (listing both cocaine and
methadone in Penalty Group 1); id. § 481.115 (making possession of substance in Penalty Group
1 a felony offense). Cash did not argue or present any evidence that her husband held a valid
prescription for methadone, as was her burden. See Health & Safety Code § 481.184(a) ("A
person claiming the benefit of an exemption or exception has the burden of going forward with
the evidence with respect to the exemption or exception."); Rodriquez v. State, 561 S.W.2d 4, 4-5
(Tex. Crim. App. 1978) (prescription qualification for heroin is exception or exemption placing
burden of proof on claimant); accord Threlkeld v. State, 558 S.W.2d 472, 473 (Tex. Crim. App.
1977) (claimant has burden of proving prescription qualification for cocaine). The combined
amount of these drugs was measurable (2) and hence sufficient to uphold a possession offense. 
Johnson v. State, 843 S.W.2d 238, 239 (Tex. App.Houston [14th Dist.] 1992, pet. ref'd)
("Possession of minute amounts of a controlled substance is sufficient to sustain a conviction if
the amount possessed is capable of being measured."); see Ortega v. State, 861 S.W.2d 91, 95
(Tex. App.Houston [1st Dist.] 1993, pet. ref'd) (affirming conviction of possession of 1.1
milligrams of cocaine); Mayes v. State, 831 S.W.2d 5, 6 (Tex. App.Houston [1st Dist.] 1992,
no pet.) (.2 milligrams of cocaine); Jackson v. State, 807 S.W.2d 387, 388-89 (Tex.
App.Houston [14th Dist.] 1991, pet. ref'd) (1.2 milligrams of cocaine); Chavez v. State, 768
S.W.2d 366, 367-68 (Tex. App.Houston [14th Dist.] 1989, pet. ref'd) (.5 milligrams of
cocaine); cf. King, 895 S.W.2d at 703 (noting if amount is so small it cannot be measured, other
evidence is necessary to show knowledgeable possession); Shults v. State, 575 S.W.2d 29, 30
(Tex. Crim. App. 1979). 

 Likewise, Cash presented no evidence that the deceased ingested the drugs
involuntarily or accidentally. Cash did introduce evidence that no additional drugs or drug
paraphernalia were found at the scene. The record also contains testimony by David Botsford,
an expert in criminal law, that the presence of drugs in the blood was insufficient to prosecute
under the criminal statutes, but he admitted that such presence was circumstantial evidence that
at some point the deceased had taken the drugs that resulted in his death. (3) Cash also introduced
evidence of other insurance policies in which a specific drug overdose exception exists, and she
showed that Group Life & Health subsequently amended its policy to include such an exception. (4) 


 After reviewing this evidence, the ERS concluded that because of the presence of
illegal drugs in the bloodstream and a complete absence of evidence of involuntary or accidental
ingestion, the insured was engaged in felonious activitypossession of a controlled substancethat
led to his death. Given that it was Cash's burden to negate the felony exception, and considering
the standard by which we review the ERS's decision, we hold that the agency decision is
supported by substantial evidence. We therefore sustain Appellants' point of error concerning the
felonious-activity exception. (5)


CONCLUSION


 We reverse the trial-court judgment and render judgment upholding the ERS
Trustees' decision denying accidental death benefits based on the felonious-activity exclusion.



 J. Woodfin Jones, Justice

Before Justices Powers, Jones and Kidd

Reversed and Rendered

Filed: August 30, 1995

Publish
1.   We note that the Texas Employees Uniform Group Insurance Benefits Act, as
amended, provides for an appeal to district court under substantial-evidence review from
an ERS Trustees' decision on payment of benefit claims from life, accident, and health
insurance coverage. See Act of May 9, 1985, 69th Leg., R.S., ch. 155, sec. 1, § 4B, 1985
Tex. Gen. Laws 685, 686 (codified at Tex. Ins. Code Ann. art. 3.50-2, § 4B (West Supp.
1995)); see also id., sec. 2(b)(4), 1985 Tex. Gen. Laws at 687. This case is distinguishable,
therefore, from our recent decision in Employees Retirement System of Texas v. Foy, 896
S.W.2d 314 (Tex. App.Austin 1995, writ requested), where we held that the district court
lacked jurisdiction over an appeal from the ERS concerning disability retirement benefits. The
ERS's authority over disability retirement benefits is controlled by a separate act now codified
in chapter 814 of the Texas Government Code. See Tex. Gov't Code Ann. §§ 814.201.-.603
(West 1994). The legislature has not specifically provided for judicial review of ERS
decisions concerning those benefits.
2.   The deceased had a combined amount of .31 milligrams of methadone and cocaine
per liter of blood. Since the average person has between five and eight liters of blood, the
deceased had between 1.55 and 2.48 milligrams of controlled substances in his body. 
3.   This contention is, of course, consistent with our discussion of Jackson. Even if
bloodstream presence is not sufficient by itself to prove prior possession beyond a reasonable
doubt, it is still some evidence of prior possession. 
4.   We are not persuaded that this subsequent policy amendment concerning drug
overdoses precludes, as a matter of law, application of the felony exclusion in this case. 
This later contract change is consistent with policy clarification and does not prohibit
application of the felony exclusion.
5. In light of our disposition of this point of error, we do not address Appellants'
additional challenges to the judgment or Cash's cross-point for attorney's fees.